## Black Mountain Corporation v. Taylor et al.

November 23, 1948.

Sampson & Sampson for appellant.

George R. Pope for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This appeal is from a judgment awarding the appellee, Floyd Taylor, compensation for total permanent disability due to a hernia which the Board found arose out of and in the course of Taylor's employment with the Black Mountain Corporation. Reversal is urged upon the ground that the award is not supported by the evidence.

In October, 1944, Taylor was employed by the Cor-
poration. Prior to his employment, he was examined
by Dr. Ruley for the Corporation and was passed con-
ditionally, so the 'Doctor testified. On the following
March 31st, Taylor's alleged injury was sustained. Tay-
lor described his injury by saying that at the time of its
occurrence he was lifting a rock and his left foot slipped.
He said he felt something tear inside, and in about a
minute a knot appeared at a place on his side where there
was a scar. His version of the accident was supported
by fellow workmen. Taylor said further that there was
nothing wrong with his body at any time before the al-
leged injury and that since then he had been unable to
work, even though Dr. Ruley performed an operation
on him for hernia in October, 1945. This operation, ac-
cording to Taylor's testimony, and which is supported
by medical testimony, was unsuccessful, and he is un-
able to perform manual labor. Dr. Ruley testified that,
when Taylor was first examined by him, he had a scar
some four inches in length on the left side of his abdo-
men in the center of which there was a small herniation
about one inch in diameter. He said he advised Taylor
of his condition and was told by him that he had suf-
fered a gunshot wound while in the Army and that an
emergency operation had been performed. He said that
Taylor told him he had done no hard labor since the
operation. Dr. Ruley stated he advised Taylor that he
might suffer pain in performing mine work, but passed
him conditionally, explaining to him that after he had
been an employee of the Corporation for 90 days he
could get hospitalization. Dr. Ruley said that after the
incision was made in performing the operation he found
a three inch loop of the small intestine had bulged
through the muscles directly under the old scar, and that
it was necessary to remove a section of the intestine.
He said Taylor recovered rapidly after the operation.
It was Dr. Ruley's opinion that no change had resulted
in Taylor's condition from the time of his first examina-
tion until the time of the operation.

Dr. E. M. Howard examined Taylor in April, 1946,
and said he found a scar on the left side of the abdomen
which had a slight bulge in the center. He said he found
no condition which would keep Taylor from working, but
if there were pain in the area of the scar it possibly

would cause some disability. Dr. Watts testified that Tayor came to him for treatment for a gunshot wound in December, 1943; that he performed an operation to remove a blood clot caused by the bullet wound, which was successful; and that his operation had nothing to do with causing the hernia in the place where the hernia operation was performed.

It is expressly provided in KRS 342.025 that, before an award for hernia may be made, the Board must find that:

"(a) There was an injury resulting in hernia;

"(b) The hernia appeared suddenly and immediately following the injury; and

"(c) The hernia did not exist in any degree, including the primary or incomplete stage, prior to the injury for which compensation is claimed."

In support of its contention that the evidence does not support the Board's finding, the Corporation would have us accept the testimony of Dr. Ruley as conclusive of the case. This we are not prepared to do. Not only do we think there was evidence of substance to support the finding of the Board, but rather we are inclined to the position of the Board that the preponderance of the evidence is in favor of the appellee. The case is not one involving the testimony of one of a scientific or particular skill as against that of laymen, as was true in American Accident Co. v. Fidler's Adm'x, 35 S. W. 905, 36 S. W. 528, 18 Ky. Law Rep. 161, and Equitable Life Assur. Soc. of United States v. Arrowood, 253 Ky. 456, 69 S. W. 2d 984.

The question at hand is ably discussed in the following quotation from the opinion of the full Board prepared by Judge E. Poe Harris:

"To sustain its contention that the hernia did so prevouusly exist, the defendant must rely almost entirely on the testimony of its witness Dr. Ruley, who had given the plaintiff a pre-employment examination on or about October 7, 1944.

"This doctor testified, in substance, that some time prior to the examination mentioned the plaintiff had undergone an abdominal operation on account of a gun-

shot wound, and that the operation had left a scar, in the center of which was a small herniation. He further testified that he discussed his findings with the plaintiff at the time.

"Undoubtedly the testimony of Dr. Ruley, if considered apart from the rest of the record, would be amply sufficient to sustain the defendant's position and to preclude the entry of an award in the plaintiff's favor.

"On the other hand, however, the testimony of the plaintiff and his witnesses presents an entirely different picture.

"The plaintiff categorically denied the conversation related by Dr. Ruley, and affirmed that no hernia or disability followed the gun-shot wound operation. He further testified that his hernia immediately followed his accident in the defendant's mine; that he was unable to work at the time his hernia operation was performed, and has been unable to work since. Dr. West testified, that on November 30, 1945, which was after the hernia operation, he examined the plaintiff and found him to have a hernia. It was the further testimony of this doctor that, in his opinion, the plaintiff would never be able to do manual labor unless he underwent another operation, and even then there would be a question. Dr. Sanders' testimony was substantially the same as that of Dr. West, except that he seemed to be a little more hopeful of the successful outcome of another operation. Dr. Watts, who performed the operation which had been necessitated by the gun-shot wound, testified that the operation which he had performed was successful. He still further testified that following the operation which had been performed by Dr. Ruley he again examined the plaintiff and found that he then had a hernia (while the date of this examination is given as being 1-16-45, it is clear from the record as a whole that he meant 1-16-46).

"In view of the showing thus made by the plaintiff, to say nothing of the other portions of the record which favor him, it is our opinion that the weight of the evidence lies with the plaintiff and that he has amply met the burden which rested upon him."

We think it is significant also that Taylor was accepted for employment by the Corporation, though, as

we have noted, Dr. Ruley said he passed him conditionally. For all this record shows, he performed his work satisfactorily until the time he sustained his injury. Furthermore, he has performed no manual labor since that date, and there is medical testimony in support of his own that he is unable to perform such work.

Judgment affirmed.