ALEXANDER MAHONE *v.* WORKMEN'S COMPENSATION
APPEAL BOARD *et al.*

(No. 8554)

Submitted April 13, 1937. Decided May 4, 1937.

*Ira P. Hager,* for appellant.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for respondent.

MAXWELL, JUDGE:

February 15, 1928, the claimant, Alexander Mahone, suffered a compound comminuted fracture of the tibia and fibula of his right leg, in the course of and resulting from his employment as a coal loader for Logan County Coal Corporation, a subscriber to the Workmen's Compensation Fund. Compensation was awarded the claimant

first on the basis of twenty-five per centum permanent partial disability, and subsequently, on a forty per centum basis. Payments under the increased award having been completed, the claimant filed with the Commissioner, October 4, 1935, a petition for additional compensation.

Upon consideration of the petition and the entire record as supplemented and amplified, the Commissioner, by order of September 2, 1936, increased the claimant's compensation to a rating of forty-five per centum permanent partial disability, conditioned upon the claimant's having his injured leg amputated below the knee—hospitalization and an artificial leg to be furnished by the Commissioner. The claimant, protesting the condition imposed by the Commissioner, appealed to the Compensation Appeal Board. Upon the Board's affirmation of the Commissioner's order, the claimant was granted an appeal by this court.

The compensation statute fixes the rating of disability for the loss of a leg (below the knee) at forty-five per centum. Code 1923, Chapter 15 P, Section 31 (d) ; Code 1931, 23-4-6 (d) ; Acts 1935, Chapter 78, Article 4, Section 6 (d).

One physician who examined the claimant just prior to the filing of his petition in October, 1935, for additional compensation, and who later testified at the hearing says that the broken bones have not united, but testimony of other physicians and surgeons indicates that the bones have united, and that the leg is about two inches shorter than the other one. A serious trouble lies in the fact that at the place of fracture there is a persistent, chronic, pus-discharging, open sore which requires almost daily dressing. There is an abscessed condition incident to necrosis of the bone. The foot and lower part of the leg suffer from lack of proper circulation of the blood, and the leg muscles disclose marked atrophy.

In a report of March 24, 1936, the chief medical examiner for the Compensation Commissioner, in making reference to the possibility of amputation of the claim-

ant's injured leg, said: "This is too good a weight-bearing leg to consider any such procedure unless the claimant wishes to definitely request amputation. No additional compensation should be paid for the leg injury unless the claimant definitely, through his attorney, petitions for an amputation of the leg." The Commissioner accepted the latter of the medical examiner's recommendations insofar as it opposes further compensation in the absence of amputation, but disregarded the first. This, we think, the Commissioner was warranted in doing, because of the chronic, vexatious condition of claimant's injured leg, and in the light of the testimony of other physicians.

The Commissioner's conclusion that rehabilitation of the claimant can best be advanced through amputation of the injured limb is well supported by medical testimony in the record. As long ago as 1930, Dr. W. E. Brewer of the Hatfield-Lawson Hospital at Logan reported to the Compensation Commissioner that in his opinion the claimant "would probably be better off if leg were amputated." Accompanying claimant's petition of October, 1935, for additional compensation, were formal statements of Drs. H. C. Jones and J. I. Justice, both of whom had examined claimant September 30, 1935. Both physicians stated, in their opinion, the claimant would be in better condition if the limb were amputated above the fracture and the dead bone removed. In conformity with the predominating expert testimony, and supplementary thereof, the claimant, in his said petition of October 4, 1935, stated "that his leg is in such condition that sooner or later amputation will be necessary to relieve the pain and suffering."

Claimant is about fifty years of age, and aside from the showing with respect to his debilitated leg, there is nothing in the record to indicate that he is not in physical condition to undergo an amputation with reasonable assurance of satisfactory results. In July, 1936, at a hearing granted the claimant by the Commissioner, Dr. H. C. Jones again expressed the opinion that the claimant's condition would be improved if the injured leg were am-

putated. At the same hearing, Dr. Quaintance testified that though thigh amputations are sometimes dangerous, "an operation below the knee is very seldom dangerous."

On this factual background, we are of opinion that the case comes within the principles enunciated in *Barnes* v. *Compensation Commissioner*, 116 W. Va. 9, 178 S. E. 70. Therein we held: "In the case of a claimant 43 or 44 years of age, concerning whom there is no showing making him a bad or doubtful surgical risk, the Compensation Commissioner may require a rehabilitative major surgical operation, without expense to claimant and under proper conditions as to hospitalization, as a condition precedent to the granting of an additional award, where it appears that such procedure is likely to result in a material improvement in claimant's physical condition and in the reduction of his disability, or in arresting its progress, is not attended with unusual pain or risk, and is such a course as an ordinarily prudent and courageous person would take for his own betterment, regardless of compensation." The rationale for the holding appears in the opinion. Both of Barnes' legs were injured below the knees, however, the proposed rehabilitative surgery did not involve amputation. But the principle is the same.

Alexander Mahone's right leg and foot are practically useless. Not only so, but the infection in the leg imperils his whole being. With the impediment and menace removed, and an artificial limb supplied, the claimant should be in condition for self-maintenance, possibly not on as satisfactory plane as before his injury, but self-maintenance nevertheless. Therefore, we are of opinion the Commissioner acted wisely in making further award contingent upon the claimant's cooperation in the rehabilitative undertaking.

In his above mentioned petition of October, 1935, the claimant alleged that his vision has became impaired in consequence of a head injury received at the same time his leg was broken in 1928. The record discloses that careful medical examination has also been made of the claimant concerning this feature of his claim. On adverse

medical reports, the Commissioner found against the claimant in this particular. In this court no point has been made of the Commissioner's disapproval and disallowance of plaintiff's claim respecting the alleged head injury.

For reasons stated we affirm the action of the Compensation Appeal Board.

*Affirmed.*