VASCO SHREWSBURY *v.* STATE COMPENSATION COMMISSIONER *and* BLACK EAGLE SMOKELESS COAL CO.

(No. 9631)

Submitted October 3, 1944. Decided December 12, 1944.

*Ray Toler,* for appellant.
*Bailey & Shannon,* for appellee.

KENNA, JUDGE:

This appeal was granted Vasco Shrewsbury from an order of the Compensation Appeal Board entered February fifth, 1944, affirming an order of the Compensation Commissioner of October eighth, 1943, vacating a five per cent permanent disability award and ordering that "the claimant report to the doctor designated to undergo an operation for the radical cure of a right inguinal recurring hernia and the correction of any nerve impingement, since it appears that the operative procedure is indicated and that it is not one which would cause the claimant undue suffering, and that the said operation is one which a person of ordinary prudence and courage would undergo for his own betterment, regardless of compensation, and that compensation be awarded upon a temporary total basis from the date of his hospital entry and to continue during his recuperation from the operation and until he is certified back to work, and that he be examined for permanent partial disability rating thereafter; it is further ordered that should the claimant not submit to the said operative procedure, and that should he refuse to undergo such an operation that no compensation therefor be allowed, and that any further claim for compensation for disability due to his existing condition be rejected; * * *". From this order the applicant appealed and the Compensation Appeal Board affirmed the Commissioner.

Claimant was injured April fourteenth, 1942, while working as a motor brakeman for Black Eagle Smokeless Coal Company. He suffered a double hernia, that on his right side diagnosed as a small indirect inguinal hernia and that

on his left side being of the same nature but direct. On May sixteenth, 1942, having applied for compensation and having been directed to do so, claimant submitted to an operation that included both sides. Compensation was ordered and the claim closed. On April twelfth, 1943, claimant was still suffering and unable to return to his usual employment, so that upon his application he was referred to Dr. Hosmer for examination. Dr. Hosmer reported to the Commissioner on June fifth, 1943, stating that his examination showed no recurrence of hernia, but that from Shrewsbury's symptoms it was entirely possible a nerve was caught in the scar on his right side and his suggestion was that the incision be reopened and the scar tissue dissected. He did not recommend a second radical operation for hernia. Upon communicating with the claimant, he advised the Commissioner that he did not wish to again undergo an operation, and upon Dr. Hosmer being told that was the case and asked for his recommendation, he advised the Commissioner that his records showed no loss of function resulting from the injury, but assuming that claimant did have the pain complained of, he estimated that a five per cent permanent partial disability award would be fair. That award was granted. Upon Shrewsbury's protest a hearing was ordered.

The hearing was held at Pineville on the twenty-fifth day of August, 1942. Dr. J. K. Lyon, who testified instead of Dr. J. F. Biggart, summoned by claimant but unable to attend, stated that he had first seen Shrewsbury the day before and had then examined him without the use of an instrument. In his opinion claimant was suffering from a recurrence of an inguinal hernia on his right side that nothing but another operation would correct. He stated that although the hernia was incomplete the claimant was totally incapacitated from following his usual employment and that he hoped, if he submitted to another operation, it would remove the disability. He was asked concerning Dr. Hosmer's report and directly disagreed with Dr. Hosmer's conclusion, and stated that the opinion

that Shrewsbury was suffering from a nerve coming in contact with scar tissue, while possible, was only a theory. He testified that Shrewsbury was a strong, healthy young man and that he would recommend the operation. He gave no opinion as to the chances of the operation being successful or the risk that Shrewsbury would run by submitting to it, other than "you might get bad results again". Asked if Shrewsbury's present condition was the fault of the operation, he stated that it was the result of the operation and that "we (the medical profession) get good results and we get poor results, * * *; some of them even die you know".

Shrewsbury was put upon the stand and asked why he was unwilling to submit to a second operation. His answer was to the effect that he had already undergone one by the best surgeon and at the best hospital available, following advice that led him to believe that one operation would take care of his difficulty. Shrewsbury testified that he was then twenty-six years old, weighed one-hundred and thirty-five pounds, as compared with one-hundred and eighty pounds before he was hurt, and that if in the future his hernia "comes down" he may have to have it operated on.

Undoubtedly, under his general powers, the Compensation Commissioner has the right to require a rehabilitative major surgical operation. Code, 23-4-9; *Barnes* v. *State Compensation Commissioner*, 116 W. Va. 9, 178 S. E. 70; *Mahone* v. *Workmen's Compensation Appeal Board*, 118 W. Va. 587, 191 S. E. 289. Code, 23-4-7, dealing with hernia, requires it to be treated by a radical operation unless it is shown that the employee or claimant is suffering from chronic disease or is otherwise in a physical condition that would make the operation unsafe for him. Counsel representing the claimant urge that this section deals only with hernia cases and is, to the extent of the subject matter, a restriction of any general powers that the Commissioner may possess in cases arising from ordinary injury, and that that being so, since this section vests in the Commissioner the right to require an operation, the provision

being expressed in the singular as distinguished from the plural number, the claimant has already complied with its terms and that the Commissioner has no discretionary power to require two, three, or an indefinite number of radical operations.

We have examined the authorities from other states on this question, and, while their reasoning is quite persuasive, owing to the difference in the wording of the statutes in different jurisdictions, their direct application to the case under consideration, we believe, would be rather difficult. However, we think that it can be stated with confidence that in hernia cases a fair majority of the holdings are to the effect that the claimant may not be required, as a condition precedent to an award based upon his present physical condition, to submit to a second radical or major operation. We so hold. See the following annotations: 105 A. L. R. 1470; 73 A. L. R. 1303; 18 A. L. R. 431, and 6 A. L. R. 1260. With the consent of the claimant we believe the Commissioner may so order.

The conditions in this case, we believe, further justify the claimant's refusal to do so. Here the two doctors who examined the claimant did not agree. One was of the opinion that his present difficulty is not caused by hernia, complete or incomplete, but is caused possibly by a nerve impinged by the scar tissue; the other that it is plainly caused by an incomplete hernia and that the scar tissue condition, if existent could be remedied in the same second radical operation. In the latter's opinion, the second operation might result fatally. In this state of the record the Commissioner did not require claimant to submit to further examination, but apparently based his order upon the opinion of the single doctor who testified that a second radical operation was indicated.

We do not believe that we can hold that Shrewsbury thus forfeited his right to be awarded compensation upon the basis of his present physical condition without saying, in effect, that the Commissioner has discretionary powers to require repeated radical operations in hernia cases. That, we believe, is not the purpose of Code, 23-4-7. The

section referred to provides expressly that the Commissioner's right to require a single radical operation is limited so that it does not apply to cases where it is shown that the applicant is in such physical condition as to render it unsafe. We find no statute authorizing the requiring of a second operation. Here the claimant has not shown, nor attempted to show, that it would be physically unsafe to have the operation performed. Neither has it been shown that it would be physically unsafe not to submit to an operation. It has been shown that, in his present condition, Shrewsbury will not be able to follow his usual occupation as motor brakeman and that his compensation award is much less than his usual earnings in his ordinary occupation. The extent to which the award would increase the premium charged the employer does not appear, but this would hardly equal the financial sacrifice that the applicant makes by refusing to undergo a second operation, if that operation were successful in restoring his earning power. There is no showing made in this record concerning even its likelihood of success, and this, we believe, should appear in every case in which submission to a major surgical operation is resisted.

For the foregoing reasons, the order of the Compensation Appeal Board and that of the Compensation Commissioner are each set aside and the case is remanded to the Commissioner with instructions to determine the percentage of disability from which the applicant is now suffering, and to enter his order awarding compensation on that basis without requiring Shrewsbury to undergo a second radical operation for hernia.

*Reversed and remanded.*

ROSE, PRESIDENT, dissenting:

In my judgment, the orders of the compensation commissioner and the appeal board respectively should be affirmed.

The whole concept of the workmen's compensation system is that an injured employee shall be rehabilitated and

restored to a sound physical condition, so far as reasonably possible. It certainly never was intended that he should have the power to elect to remain crippled and to capitalize his injury for the purpose of drawing a pension therefrom for the rest of his life. It has always been held in this state, and in all others, so far as I can ascertain, that a claimant who, without reason, refuses to submit to the ordinary and proper surgical treatment to remedy his injury is barred from monetary compensation. *Mahone* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 587, 191 S. E. 289; *Gillam* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 571, 191 S. E. 204; *Barnes* v. *State Compensation Commissioner,* 116 W. Va. 9, 178 S. E. 70. In each of these cases further compensation was denied upon the ground that a workmen's compensation claimant cannot reasonably refuse to undergo a proper surgical operation. This conclusion was reached, not by reason of any statute, but as a matter of common sense. The disability remaining after such refusal was considered, not as having resulted from claimant's injury, but as having continued from his own fault in refusing to take the usual and ordinary care and precaution for his own recovery.

Of course, if, for any legitimate reason, the operation in a particular case would be more than ordinarily dangerous, or offered no reasonable prospect of success, it cannot be required. *Gillam* v. *Workmen's Compensation Appeal Board, supra; Cole* v. *State Compensation Commissioner,* 113 W. Va. 579, 169 S. E. 165. But in the present case no such situation is presented. The claimant is only twenty-six years of age. He and his own physicians agree that he is physically sound. The physicians recommend the operation and anticipate that it will be successful. The claimant says that he will undertake the operation if his hernia becomes worse. The remaining hernia is but slight. The claimant simply prefers to preserve the injury and to receive money instead of being cured. In many, if not most cases of severe injury, successive operations are required as a matter of course. Is it possible that the law requires something less from an employee when his injury

takes the form of a hernia? I do not so read the statute. The provision is simply that "All hernia, inguinal, femoral or otherwise, * * * shall be treated in a surgical manner by radical operation. * * * If, however, it is shown that the employee has some chronic disease, or is otherwise in such physical condition that it is considered unsafe for him to undergo such operation, he shall be paid as provided in section six." Code, 23-4-7. It is difficult to perceive how this language adds anything to what an employee, injured in any other way, would have been required to do. All are required to submit to such surgical operations if, without abnormal risk, they reasonably promise recovery or relief. Nor does the language, in any sense, limit surgical treatment to a single operation. Is it to be said that this statute was intended to make surgical treatment for hernia less than would be required in case of other injuries? The contrary is clearly indicated. The words "by radical operation" clearly are not equivalent to the words "by a single radical operation".

Further language in the statute confirms this conclusion. The character and amount of compensation allowable after a hernia operation and the limitation under which the same may be allowed are precisely stated. The language is "In non-fatal cases, time loss only shall be paid, unless it is shown by special examination that the injured employee has a permanent partial disability resulting after the operation. If so, compensation shall be paid in accordance with the provisions in section six of this article with reference to permanent partial disability." Code, 23-4-7. What constitutes permanent partial disability after a hernia operation is, of course, precisely what would be permanent partial disability in any other case. Is a disability permanent where all the evidence, the claimant's own and that of his physicians, conclusively shows that a further operation, attended with no unusual risk or suffering, will, in all probability, result in a complete cure? It clearly appears that, in no permissible sense of the language, is the disability, which now remains from the claimant's hernia, "permanent", as the term is used in the compensation statutes.

Decisions from other states are not helpful. They can be, at best, only persuasive, and on the present subject are largely meaningless, for the reason that no other states appear to have applicable statutory provisions like or similar to those of this state.

Judge Fox concurs in this note.