ARKANSAS WORKMEN'S COMPENSATION COMMISSION
v. SANDY.

4-9188                                        233 S. W. 2d 382

Opinion delivered October 30, 1950.

*John T. Jernigan* and *John P. Streepey,* for appellant.

*Wm. H. Roth,* for appellee.

DUNAWAY, J. The Arkansas Workmen's Compensation Commission appeals from an order of the White

Circuit Court. The court set aside a finding of the Commission that appellee, David R. Sandy, was not entitled to payment from the Workmen's Compensation "Second Injury Fund" as claimed by him, and allowed said claim for total and permanent disability.

In 1925, before the enactment of a Workmen's Compensation Act in Arkansas, Sandy received an injury to his left hand, whereby he lost all the fingers on the hand except the thumb. On July 21, 1943, while employed as a millwright by the Hansen & Haggott Lumber Company of Searcy, Arkansas, Sandy suffered an injury to his right arm, necessitating its amputation above the elbow. Compensation at the rate of $20 per week was paid him for 20 weeks, covering his period of temporary total disability. Claimant was then paid a lump sum settlement in the amount of $3,754.76, representing the sum he was entitled to at $20 per week for 200 weeks for loss of his right arm, as provided for by the Workmen's Compensation Act. This order of the Commission was dated April 6, 1944.

On July 19, 1944, Sandy filed a claim with the Commission alleging that as a result of the 1925 injury to his left hand and the subsequent loss of his right arm in 1943, he was totally and permanently disabled. By this claim appellee sought additional compensation from the "Second Injury Fund" provided for by the Workmen's Compensation Act.

The section of the Workmen's Compensation Act under which Sandy was paid compensation for the loss of his right arm now appears as § 81-1313 (c) Ark. Stats. (1949 Suppl.). That section provides the compensation which shall be paid for the specific loss of various members of the body.

The part of the Act under which the present claim for additional compensation was filed reads as follows: (Ark. Stats. (1949 Suppl.) § 81-1313)

"(f) Second injury. In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto:

. . . . . . . . .

"(2) If an employee has a prior permanent disability not occasioned by an injury resulting while in the employ of the same employer in whose employ he received a subsequent permanent injury, the amount of compensation for the subsequent injury shall be fixed as follows:

. . . . . . . . .

"iii. If an employee who had previously incurred permanent partial disability through the loss of one hand, one arm, one foot, one leg, or an eye, incurs permanent total disability through the total loss of another member, enumerated in this sentence, he shall be paid, in addition to the compensation for permanent partial disability provided in section 13 (c) (subsection (c) of this section), additional compensation during the continuance of such total disability not to exceed sixty-five per centum (65%) of the average weekly wage earned by him at the time of the accident which produced the total permanent disability. In case an employee who has been awarded additional compensation under this subsection subsequently establishes an earning capacity by employment, he shall be paid during the period of such employment, instead of the compensation above provided sixty-five per centum (65%) of the difference between his average weekly wages at the time of the accident which produced total disability and his wage earning capacity as determined by his actual earnings in such employment. The sum total of compensation payable for all disabilities shall not exceed 450 weeks or eight thousand ($8,000) dollars. Compensation provided in this subsection shall be paid out of a special fund created for such purpose in the following manner: The employer, or, if insured, his carrier, shall pay the sum of five hundred ($500) dollars into such special fund for every case of injury causing death in which there are no persons entitled to compensation. The State Treasurer shall be custodian of this special fund, to be known as Second Injury Fund, and the Commission shall direct the distribution thereof."

After appellee's additional claim was filed, he was examined by Dr. D. T. Cheairs, medical examiner for the Commission. Dr. Cheairs' report reads as follows:

"I have today, September 29, 1947, made examination of David R. Sandy, white male, age, 64 years. Injured his left hand in May of 1925, and lost his right arm July 21, 1943. *Present Complaint*: 'I have lost my left index, middle, ring and little fingers where they join the left hand. My left thumb is o. k.' *Findings*: Claimant's right arm was amputated just above the elbow. His left index, middle, ring and little fingers were amputated in metacarpel-phalangeal joints. Left thumb functions normally. *Opinion*: Claimant has 70 per cent permanent partial disability to his left hand in addition to the loss of his right arm about the elbow."

This report and testimony of the claimant were considered upon hearing of the claim by Chairman Peel of the Commission in September, 1947. Commissioner Peel's opinion denying the claim was filed December 16, 1947. At the hearing by the full commission upon review of Commissioner Peel's findings, a medical report of Dr. Porter R. Rogers, claimant's family physician, was filed. Dr. Rogers' report, dated February 21, 1948, is as follows:

"This is to certify that I have been the family physician of David R. Sandy since 1942. In 1943, Mr. Sandy received an injury in which he lost his right arm. He has only the thumb of his left hand, having lost all of his fingers in an accident in 1925. *Physical Findings*: The loss of all the fingers on his left hand and the loss of his right arm above the elbow, leave Mr. Sandy totally and permanently disabled from following any gainful occupation. It is my opinion that Mr. Sandy is totally and permanently disabled in his left hand."

The claimant's own testimony may be briefly summarized: Prior to the 1925 injury to his left hand, he was a millright and continued in this occupation until he lost his right arm as a result of the accident in 1943. After the loss of his right arm he bought and sold timber

tracts and timber until some time in 1947. His son had a small sawmill, and part of the timber was processed through this mill. He also bought some tie siding from his son and had it manufactured. He was only able to make a living through the aid of his son and because of the lump sum compensation settlement he had received. His plan (set forth as the reason for the lump sum settlement in 1944) to go into the beer business had not materialized. He could operate a rice farm in his physical condition, and thinks he could make a living doing this if he had the necessary capital.

The Commission also considered a letter dated November 1, 1944, from the District Supervisor of Vocational Rehabilitation, State Board of Vocational Rehabilitation, to the effect that because of Sandy's physical disability and his advanced age, there was nothing that department could do to assist him.

Upon the evidence above outlined, the Commission denied appellee's claim. The Commission found that Sandy was not totally and permanently disabled and that he had not suffered the total loss or loss of use of his left hand prior to the 1943 injury. The Commission found as a fact that the loss of use of claimant's left hand was only partial, both before and after the subsequent injury to his right arm.

In denying the additional compensation claimed from the ''Second Injury Fund'', on the basis of its finding of fact, the Commission stated this in its opinion:

''This fund, called the 'Second Injury Fund', is a limited and restricted fund and is created specifically for the benefit of those employees who are found to be totally and permanently disabled and who strictly comply with the provisions and requirements of § 13 (f) (2) (iii). While Workmen's Compensation Acts are generally to be liberally construed the solvency of this special 'Second Injury Fund' requires that the provisions and requirements thereof be fully and strictly complied with. In our opinion, the 'loss of a member or organ', or the 'loss of use of a member or organ', as is provided for in § 13

(f) (2) (iii) means the total loss or total loss of use. To hold otherwise would open this special fund to the point of insolvency and provide no benefit to those who do comply with its provisions and who are entitled to benefits thereunder.''

This court has held that the degree of disability suffered by an injured employee is a factual question to be determined from the evidence in the case. *Caddo Quicksilver Corporation* v. *Barber,* 204 Ark. 985, 166 S. W. 2d 1; *Bookout* v. *Reynolds Mining Company,* 213 Ark. 198, 209 S. W. 2d 881. .

In the instant case, the medical testimony as to the extent of claimant's disability was conflicting, and the Commission evidently chose to accept the report of Dr. Cheairs. The courts are without authority to reverse the conclusion of the Commission in this regard. *Mechanics Lumber Company* v. *Roark,* 216 Ark. 242, 224 S. W. 2d 806. On the whole case, there is substantial evidence to support the Commission's finding of fact, and the Circuit Court erred in setting aside the order of the Commission.

The judgment is reversed and the cause remanded with instructions to affirm the Commission's action.