124 N.J. Super. 405 (1971)
307 A.2d 138
GIACOMO ZANCHI, PETITIONER-APPELLANT,
v.
S & K CONSTRUCTION COMPANY, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Union County Court, Law Division.
Argued November 19, 1971.
Decided December 14, 1971.
*408 Mr. Alfred G. Osterweil, argued the cause for Petitioner-Appellant (Schreiber and Osterweil, attorneys).
Mr. Edwin J. McCreedy, argued the cause for Respondent-Appellee (Conant, Halberstadter & McGuire, attorneys).
WOOD, WILLIAM FILLMORE, J.C.C.
This compensation claim arose out of a heart attack (myocardial infarction) *409 petitioner suffered during his employment as a construction laborer for respondent.
Respondent admitted the employment. The compensation judge found that there was a causal relationship between the heart attack and the employment; and respondent does not contest that finding. Indeed, a contrary finding would have been almost inconceivable, since the medical experts for both parties testified that such relationship existed and the circumstances (i.e. the strenuousness of petitioner's work, his pre-existing arteriosclerotic heart condition and the proximity of the attack to the work effort) unmistakably supports the experts' testimony.
The only issue on the appeal is the amount of the award. Even that issue is not as broad in scope as it might be. The compensation judge, on the basis of his assessment of the extent of petitioner's injury, made an award of 25% of total. Petitioner does not quarrel with the award insofar as the injury itself is concerned. Petitioner's dissatisfaction with the award is due to the fact that the trial judge rejected the contentions that, because of other or non-medical factors, petitioner is now unemployable. In other words, petitioner takes the position that, under the so-called "odd lot" doctrine, the award should have been 100%. In rejecting that position the judge stated:
The only evidence submitted by the petitioner in support of his allegation of unemployability was the testimony by Dr. Goodman (petitioner's medical expert) * * *. I was not impressed with Dr. Goodman's cursory exclusion of the petitioner from the job market, absent any evidence that he had, at least, attempted to secure some kind of employment.
In accordance with my well-established duty as the appellate county court judge, I have carefully considered de novo or independently the issue here involved. Close v. Kordulak Bros., 44 N.J. 589 (1965). I firmly disagree with the conclusion of the trial judge. However, my disagreement does not rest upon any difference with the trial *410 judge as to the credibility of any of the witnesses. Hence, there is no occasion for me to defer, or to give consideration, to his superior opportunity to assess credibility.
My disagreement with the trial judge's conclusion is based upon a difference of opinion as to whether petitioner's allegation of unemployability is sufficiently supported by undisputed evidence. The trial judge expressed the view that the allegation is supported only by Dr. Goodman's "cursory exclusion of petitioner from the job market." The judge's use of the adjective "cursory" suggests that he considered the doctor's assertion to be evidentially unsupported. If that was true, the judge properly rejected the doctor's testimony as to employability, not only because it was cursory but, more importantly, because it would have exceeded the realm of the doctor's expertise. Petitioner's claim of total unemployability is based, for the most part, upon non-medical reasons. There is no contention that petitioner is medically unemployable. In order to determine the value and meaning of the doctor's answer as to unemployability, one must examine the question which preceded the answer. That question asked the witness to assume that petitioner had no skills other than for work as a laborer in the agricultural or construction fields. In light of that assumption, the doctor's testimony must be understood to mean only that petitioner was unemployable because he was physically unable to do hard labor, the only work which (by assumption) he was capable of doing. The medical experts were in agreement that petitioner could not do hard labor.
The task of determining whether the assumption as to petitioner's capabilities was justified was for the trial court, not the doctor. The court itself must decide, on the basis of other evidence and its own common knowledge, whether circumstances unrelated to the accident in question, coupled with the disability arising from the accident, rendered petitioner unemployable. In approaching that task the court should keep in mind the extent to which the respective parties have the burden of proof.
*411 New Jersey adopted the odd-lot doctrine as part of its Workmen's Compensation law in Rodriguez v. Michael A. Scatuorchio, Inc., 42 N.J. Super. 341, 353 (App. Div. 1956), certif. denied 23 N.J. 140 (1957). The court there stated that "inability to get work, traceable directly to the compensable injury, may be as effective in establishing disability as is inability to perform work." The thrust of this doctrine goes to the question as to the degree of probability the particular claimant will be able to secure regular employment in a competitive market place. Larson, in his work on Workmen's Compensation Law, stated the doctrine as follows:
The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps. (2 Larson, § 57.51 at 88.1)
The petitioner in any workmen's compensation case bears the burden of proving in the first instance that an award of compensation in a particular amount is probably justified. Lightner v. Cohn, 76 N.J. Super. 461 (App. Div. 1962), certif. denied 38 N.J. 611 (1962). However, I believe that the judge of compensation was in error when he held (at least by implication) that, in order to sustain his burden of proof, the petitioner, where he seeks 100% disability, must come forward with evidence that he unsuccessfully sought employment. Such evidence would, of course, be valuable to a petitioner; but it is not essential where (as here) other circumstances indicate that the search for employment would probably be fruitless. Moreover where (as here) a claimant has produced evidence which brings him within the ambit of the odd-lot doctrine, the burden is then on the respondent "to come forward with proof that work within the capacity of such an employee is, in fact, within reach." Lightner v. Cohn, supra at 468. The rationale for *412 this principle is that the employer, and not the employee, especially where the latter's intellectual capacity, employment experience, and physical condition are limited, can more readily obtain information with respect to the availability of employment within the capacity of the petitioner.
In the Lightner case the petitioner, as the result of an accident, had three fingers and part of the thumb amputated. He also suffered, to some degree, adverse psychological reaction from the accident. He claimed total disability. Three of his four doctors testified that he was unemployable or would encounter great difficulty in obtaining work. The fourth doctor felt that such an inquiry was not in his field or expertise. The two doctors who testified for respondent stated, in essence, that plaintiff could be rehabilitated and then he could probably get some job. The Appellate Division held there was sufficient evidence to sustain a finding of 100% total disability even though petitioner's efforts to find work were "somewhat limited."
In the instant case, the petitioner produced evidence which showed him to be probably within the "odd-lot" category. Petitioner stated that he still sees the doctor every two weeks and that he has heavy breathing after climbing the steps in front of his house. Thus there is a question as to whether he had the physical strength to go out and look frequently or extensively for a job. Therefore, the burden was upon the respondent to come forward with evidence to show that there was reasonably available to the petitioner the type of employment that he was physically and otherwise able to do. The respondent never produced such evidence.
Whether an individual is totally disabled is a "mixed question of law and fact," and its determination rests within the sound discretion of the court, guided by established principles of law. Cleland v. Verona Radio Inc., 130 N.J.L. 588, 596 (Sup. Ct. 1943). The court in making such a determination must look at the whole man, including such things as his background, education, mental capacity, *413 his ability or inability to communicate in English, his present physical condition and his vocational aptitudes. Rodriguez v. Michael A. Scatuorchio, Inc., supra, 42 N.J. Super. at 354, 355; 2 Larson, supra, § 57.51, p. 88.4.
The petitioner presently is approximately 60 years old. Though American born, he has lived a substantial portion of his life in Italy and he speaks and reads very little English. He is, to all intents and purposes, functionally illiterate. His educational training is meager, and his employment record indicates only highly strenuous labor of the unskilled variety. He suffered an inferior wall myocardial infarction in July 1969 and his present condition is hypertensive cardiovascular disease. At the time of trial (16 months after the attack) he was still seeing a doctor every two weeks. And though he would take two walks each day, he still suffered from heavy breathing after climbing the 18 steps in front of his house. The medical evidence proved that he could never do heavy or strenuous work again and that, on the contrary, he must restrict himself to light or sedentary work. There is a strong probability that the latter type of work is not available to him.
This means that he is unemployable and totally disabled within the meaning of the odd-lot doctrine. Kalson v. Star Elec. Motor Co., 15 N.J. Super. 565 (Essex County Ct., Law Div., 1951), aff'd 21 N.J. Super. 15 (App. Div. 1952); Cleland v. Verona Radio Inc., supra; Jersey City Printing Co. v. Klochansky, 8 N.J. Super. 186 (App. Div. 1950). There is no evidence that petitioner is a malingerer or one who seeks a voluntary retirement from the labor market.
This court concludes therefore that the petitioner is entitled to an award of 100% disability. The judgment of the Compensation Court is modified accordingly.