Donald Ray Pertee

*v.*

State Workmen's Compensation Commissioner

*and*

United States Steel Corporation

(No. 14406)

Decided June 19, 1979.

*Ballard & Brumfield, McGinnis E. Hatfield* for appellant.

*Love, Wise, Robinson & Woodroe, George W. S. Grove, Jr.,* for appellees.

MILLER, JUSTICE:

In this appeal the claimant, Donald Ray Pertee, argues that the State Workmen's Compensation Commissioner and the Appeal Board erred in not finding him permanently and totally disabled under the second injury life award statute, W. Va. Code, 23-3-1, by virtue of the combined effects of six inguinal hernia injuries. We agree with the claimant's position.

## I

The employer, United States Steel Corporation, initially raises the question of whether there was sufficient proof of the existence of the last two hernias, which allegedly occurred in December, 1969, and May, 1970, while claimant was in its employment. This issue, however, is foreclosed by our former decision, *Pertee v. State Workmen's Compensation Commissioner*, 156 W. Va. 773, 197 S.E.2d 318 (1973), which serves to outline the facts surrounding the claimant's prior hernias. In that case, we settled the compensability of the last two hernias, and all that remained to be done was to determine the amount of permanent disability. On remand, the claimant was awarded a 5 percent permanent partial disability.

## II

The medical evidence surrounding the claimant's disability is not in substantial conflict. All the doctors who examined the claimant found that as a result of multiple hernias in the same area, the claimant is subject through physical activity to a recurrence of hernia because of a weakening of the muscles and tissue in that area. The doctors were of the view that he could not engage in heavy physical labor.

A Dr. Murry examined the claimant after the last hernia and testified at a 1971 hearing that claimant had a recurrent hernia. The claimant testified that Dr. Murry had suggested that he seek welfare benefits, since his condition would probably preclude him from reemployment.

At another hearing, a Dr. Bradford stated that as a result of multiple hernias, the claimant is unable to engage in any manual labor which involves strenuous physical activity. He also stated in his medical report of March 21, 1977: "The rate of recurrence in hernia increases remarkably following the first and each succeeding or additional operation ... Most corporations would hesitate to hire anyone that had previous hernial surgery to the extent that Mr. Pertee did."

A Dr. Powers agreed the claimant could not undertake strenuous activity, and spoke of the fact that "in view of the number of [hernia] recurrences that he has had, the strength of the muscles and the repair in this area would be questionable. Therefore, I doubt very seriously if he would be able to do any real strenuous work because of the muscle weakness in this area. . . ." The doctor also noted on his examination that claimant was extremely tender at the site of the hernia.

In regard to successful surgical repair where a person has had recurrent hernia, a Dr. Thomas stated: "I think the more hernia repairs you have the chances you have to get a successful repair are slimmer. The chances of having a cure of the hernia probably is now very slim." Dr. Thomas was also of the view that the claimant's hernia problem prevents him from doing physical labor and that his condition is permanent.

Several lay witnesses testified that claimant is limited in his normal physical activity and that he limps. A previous employer testified that he had observed the claimant moving with difficulty since the last two hernias, and that on one occasion he had to assist him in moving his legs into a car. He stated that although claimant had been a good worker, he would not reem-

ploy him because he did not want to jeopardize his compensation rates.

Both the claimant and his wife testified that pain and swelling exist at the site of the hernia and that any strain causes the area to swell. The pain and swelling are reduced if the claimant lies on his back with his legs elevated. For the past six years he has slept with a pillow between his legs to ease the pain.

Finally, the record demonstrates that the claimant is 39 years of age, has only a grade school education, and has no special training or work skills. His entire employment history has been confined to work requiring heavy physical labor.

In *Shrewsbury v. State Compensation Commissioner*, 127 W. Va. 360, 32 S.E.2d 361 (1944), this Court overturned a 5 percent permanent partial disability award for a 26-year-old claimant who had suffered a second inguinal hernia, but who refused to undergo a corrective operation. At that time, W. Va. Code, 23-4-7, provided that if the claimant refused "to undergo the medical operation for the cure of said hernia no compensation will be allowed. . . ."[1] This section also provided that if the claimant's physical condition was such "that it is considered unsafe for him to undergo such operation . . .," he was entitled to receive a permanent disability award under W. Va. Code, 23-4-6. *Shrewsbury* concluded:

> "Here the claimant has not shown, nor attempted to show, that it would be physically unsafe to have the operation performed. Neither has it been shown that it would be physically unsafe not to submit to an operation. It has been shown that, in his present condition, Shrewsbury will not be able to follow his usual occupation as motor brakeman and that his compensation award is much less than his usual earnings in his ordi-

---

[1] W. Va. Code, 23-4-7, was repealed by the 1976 Acts of the Legislature, Ch. 134, and by the 1977 Acts of the Legislature, Ch. 162.

nary occupation." [127 W. Va. at 365, 32 S.E.2d at 363]

Certainly *Shrewsbury* suggests that this Court considered the claimant to be virtually totally disabled, since it set aside the 5 percent award and directed a reevaluation of the amount of disability. A review of our hernia cases does not reveal, however, any case where this Court has specifically held that a claimant can become totally and permanently disabled as a result of multiple hernias. Our cases do, however, reflect that this Court has perhaps been more liberal in viewing a hernia case in favor of the claimant than in most other industrial injury cases. *See, e.g., Johnson v. State Compensation Commissioner,* 128 W. Va. 37, 35 S.E.2d 677 (1945); *Szalay v. State Compensation Commissioner,* 127 W. Va. 449, 33 S.E.2d 236 (1945); *Cole v. State Compensation Commissioner,* 113 W. Va. 579, 169 S.E. 165 (1933); *Poccardi v. Public Service Commission,* 75 W. Va. 542, 84 S.E. 242 (1915).

While the employer argues that the medical evidence indicates the claimant's hernia condition has been successfully repaired in the sense that there is no actual hernia protrusion, this argument ignores substantial medical evidence that his condition is such that he is extremely vulnerable to a recurrence of hernia. There is little dispute that he suffers pain and swelling and is unable to move about freely. A similar argument was presented and rejected in *City of Altus v. Glendenning,* 549 P.2d 75, 77 (Okla. 1976), where the court, in awarding total permanent disability, stated:

> "This argument rests upon the claim medical evidence showed claimant's last hernia had been repaired successfully. From this, respondents conclude evidence of 'successful' surgical repair precludes a finding of disability.
>
> "In view of medical evidence of claimant's poor prognosis, this argument is unpersuasive. This is true particularly when measured by evidentiary

factors in *Walker*, supra, recognizing successive herniorraphys increase possibility of recurrence. Even respondents' medical evidence showed claimant did not have good body tissue, and recurrence of hernia could be precipitated by normal activity....

"The general tenor and intent of Dr. A's testimony reflected permanent total disability for performance of manual labor resulted from multiple surgeries, and further surgery was a foregone conclusion if claimant attempted to return to work. We are of the opinion the medical testimony sufficiently meets the evidentiary requirements in *Willson*, supra, and cases cited."

The evidence in the present case demonstrates that the claimant, as a result of six recurrent inguinal hernias, is "unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time...." W. Va. Code, 23-4-6(n); *Posey v. State Workmen's Compensation Commissioner*, _____ W. Va. _____, 201 S.E.2d 102 (1973). Such evidence warrants the conclusion that permanent total disability exists, and this finding is compatible with the holding of other courts on the issue of total disability resulting from multiple hernias. *See, e.g., Mt. Olive & Staunton Coal Co. v. Industrial Commission*, 367 Ill. 574, 12 N.E.2d 664 (1937); *Black Mountain Corp. v. Taylor*, 308 Ky. 561, 215 S.E.2d 277 (1948); *City of Altus v. Glendenning*, supra; *Testa v. National Radiator Corp.*, 141 Pa. Super. Ct. 206, 15 A.2d 42 (1940).

### III

While the evidence demonstrates the claimant is entitled to a permanent total disability award, it is clear that his last employer, United States Steel Corporation, cannot be charged with the entire award since four of the six hernias occurred previous to his employment

there. The second injury statute, W. Va. Code, 23-3-1,[2] was purposely designed to encourage employers to hire disabled workers "by not charging an employer for pre-existing disabilities. . . ." *McClanahan v. Workmen's Compensation Commissioner,* ____ W. Va. ____, 207 S.E.2d 184, 186 (1974). The proper application of the second injury statute was clearly set forth in the sixth syllabus of *Posey, supra:*

> "Where evidence discloses that the precipitating cause of a current workmen's compensation disability was a current injury, but permanent and total disability would not have resulted but for the combined effect of the current injury and a previous injury, the employee shall be entitled to a total disability award, but the employer shall be chargeable only for the compensation payable for the second injury where the previous injury caused a definitely ascertainable impairment although the percentage of disability for the previous injury is not ascertainable."

The medical testimony leaves little doubt that the muscles and tissue at the hernia site became progressively weaker and less stable as a result of the successive hernias. The frequency of recurrence increases in direct proportion to the number of hernia episodes. Consequently, we can conclude that the two latest episodes did not play a large role in the total disability of the claimant. Thus, the 5 percent permanent partial disabil-

---

[2]The relevant portion of W. Va. Code, 23-3-1, provides:

"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury: Provided, however, that in addition to such compensation, and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve, created in the manner hereinbefore set forth."

ity award should be attributed to the employer's account and the remaining permanent total disability must be charged to the second injury fund.

For the reasons set out above, the order of the Workmen's Compensation Appeal Board of November 29, 1978, is reversed, and the case is remanded for entry of an order in conformity with this opinion.

*Reversed and remanded.*