208 N.J. Super. 215 (1986)
505 A.2d 194
ROBERT C. ZABITA, PETITIONER-RESPONDENT CROSS-APPELLANT, CROSS-RESPONDENT,
v.
CHATHAM SHOP RITE, INC., RESPONDENT-RESPONDENT CROSS-APPELLANT, CROSS-RESPONDENT, AND SECOND INJURY FUND, RESPONDENT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1986.
Decided February 13, 1986.
*217 Before Judges SHEBELL and MATTHEWS.
Joseph M. Soriano, Deputy Attorney General, argued the cause for Respondent-Appellant, Cross-Respondent Second Injury *218 Fund (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Joseph M. Soriano, on the brief).
Judith A. Wahrenberger argued the cause for Respondent-Respondent, Cross-Appellant Chatham Shop Rite, Inc. (Connell, Foley & Geiser, attorneys; George J. Kenny, of counsel; Judith A. Wahrenberger, on the brief).
William McGovern, III argued the cause for Petitioner-Respondent, Appellant Robert C. Zabita (McGovern and Roseman, attorneys; Harold T. McGovern, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The Second Injury Fund appeals the determination of the Division of Workers' Compensation finding petitioner Robert C. Zabita to be totally disabled and eligible for Fund benefits. The Fund contends the record contains no evidence of any pre-existing disabilities and therefore petitioner failed to establish Fund liability under N.J.S.A. 34:15-95. It also alleges error in finding total disability exclusive of petitioner's cardiac condition and in awarding temporary disability benefits to January 24, 1982, the date of petitioner's cardiac hospitalization.
Respondent Shop-Rite cross-appeals claiming error in the award of total disability and additional temporary disability benefits.
Petitioner Zabita also cross-appealed, however his brief was barred and his cross-appeal dismissed by order of December 5, 1985. We allowed him to file a brief and appendix nunc pro tunc in January of 1986. His counsel represented at oral argument that he has abandoned his cross-appeal.
On March 30, 1979 Zabita filed two claim petitions, alleging orthopedic, neurologic and neuropsychiatric injuries. Each claimed injury to the right knee. On May 17, 1979 both petitions were amended to include an allegation of total disability *219 under the "odd-lot doctrine." These injuries were alleged to have arisen out of and in the course of his employment with Chatham Shop Rite, Inc. On June 10, 1983 Zabita filed a verified claim petition to secure benefits from the Fund.
Petitioner first injured his right knee while working at the Chatham Shop Rite in 1972 when it was struck by falling boxes. In January of 1975 he reinjured the knee while stacking potatoes, resulting in a tear of the medial meniscus, cystic degeneration and synovitis. He required surgery for the torn meniscus and in April of 1978 was awarded 23 1/2 percent permanent disability of the right leg.
On June 18, 1977 petitioner fell from a pallet and again injured his right knee. He was out of work a couple of weeks and was under medical care for a few months. On June 24, 1978, while pushing a cart loaded with milk he felt extreme pain in the same knee. He received medical care the next day and was later hospitalized and an arthrotomy was performed. In September of 1978 he underwent additional knee surgery and his kneecap was removed.
He never returned to work after the 1978 accident and at the time of trial he was still under medical care. His right leg became atrophied. He complained of difficulty in sleeping and walking and that his knee buckles and cracks. There was swelling, limitation of flexion and need to use a cane for walking. On his doctor's advice he sought rehabilitation for the leg. Although he was a laborer he applied for office-related employment, but was not able to interview due to the cardiac episode of January of 1982. He testified that even office work would have been difficult due to the effort required in walking and the constant need for shifting of positions while seated.
The judge of compensation stated:
I am satisfied petitioner has suffered severe restriction of function of the right knee, together with psychiatric problems resulting from the anxiety state, and also that in combination with his pre-existing conditions he, in all medical probability, was 100 percent permanently totally disabled when such condition *220 became fixed and measurable as of January 24, 1982, when he was hospitalized with cardiac symptoms.
He found orthopedic disability to the extent of 75 percent of the right leg and permanent neuropsychiatric disability to the extent of 22 1/2 percent of partial total. He converted this award into 60 percent of the partial total. He found no causal relationship between Zabita's cardiovascular disease and his compensable accidents. The judge ordered the Fund to pay "the difference between 450 weeks and the 270 weeks of permanent disability compensation previously received."
There must be sufficient credible evidence present in the record to support the findings of the judge of compensation. Jackson v. Concord Co., 54 N.J. 113, 117-118 (1969); Salierno v. Micro Stamping Co., 136 N.J. Super. 172, 179 (App.Div. 1975), aff'd 72 N.J. 205 (1977). Total and permanent disability exists where a worker is "rendered unemployable in a reasonably stable job market" after a work-related accident, "notwithstanding that factors personal to the individual play a contributory part in such unemployability." Katz v. Township of Howell, 67 N.J. 51, 62 (1975); Barbato v. Alsan Masonry, 64 N.J. 514, 526-527, 537 (1974); see also Kalson v. Star Elec. Motor Co., 15 N.J. Super. 565 (Cty.Ct. 1951), aff'd 21 N.J. Super. 15 (App.Div. 1952).
It is urged that because no medical expert testified petitioner was totally disabled due to his last compensable accident in combination with any pre-existing disability that the compensation judge's determination cannot be supported by the record. This argument is buttressed by reference to petitioner's cardiac condition and coronary bypass surgery and the fact that the medical witnesses in opining petitioner was totally disabled included his cardiac condition as a basis for this conclusion.
The scope of appellate review of a judgment of the workers' compensation court is initially circumscribed by the determination of whether the findings of the judge could reasonably have *221 been reached on sufficient credible evidence present in the record as a whole after giving due weight to his expertise in the field and his opportunity to hear and see the witnesses. De Angelo v. Alsan Masons Inc., 122 N.J. Super. 88, 89-90 (App. Div. 1973), aff'd 62 N.J. 581 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). We hold that giving due weight to the judge of compensation's expertise and opportunity to view the witnesses and evidence, the record supports his finding that petitioner was totally disabled prior to his hospitalization for cardiac problems nearly four years after his last compensable accident.
Despite petitioner's hopes for reemployment we believe the finding of total and permanent disability within the contemplation of the Workers' Compensation Act is inescapable. A workman need not be bedridden, paralyzed, or unable to get about; nor is ability for light or intermittent or sedentary work inconsistent with total disability. Kalson, 15 N.J. Super. at 573. We think it clear that petitioner could not compete in the labor market, pass a preemployment physical or otherwise appear as one whom an employer would be interested in hiring other than as an act of charity. Id. at 576. The inability to find work, traceable to an employee's compensable injury, is tantamount to the inability to perform work. Barbato v. Alsan Masonry, 64 N.J. 514, 528 (1974); Larson, Law of Workmen's Compensation, § 57.61 (1983).
The judge of compensation acted properly in viewing the entire evidence and applying his own common knowledge and expertise to determine that the employee was rendered totally disabled prior to his cardiac hospitalization. Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534 (1979); Germain v. Cool-Rite Corp., 70 N.J. 1, 9 (1976); Lightner v. Cohn, 76 N.J. Super. 461, 468-469 (App.Div. 1962), certif. den. 38 N.J. 611 (1962); Zanchi v. S & K Constr. Co., 124 N.J. Super. 405, 410 (Cty.Ct. 1971), aff'd 63 N.J. 331 (1973).
*222 It is clear that the judge of compensation, contrary to the assertions of the Fund, expressly and impliedly negated any view that petitioner's total disability was caused by "progressive physical deterioration subsequent to the compensable accident" thereby rendering the Fund not liable under N.J.S.A. 34:15-95.
It is significant that N.J.S.A. 34:15-95(b) was deleted by L. 1979, c. 283, § 17. See Lewicki v. N.J. Art Foundry, 88 N.J. 75, 84 (1981). Prior to the deletion where there was causal relationship between the prior injury or condition and the later compensable accident, whether by aggravation, activation, or acceleration, there was no Fund liability. N.J.S.A. 34:15-95(b); Paul v. Baltimore Upholstering Co., 66 N.J. 111, 122-125 (1974). Now, where the later compensable injury aggravates a prior partial disability, whether or not the prior disability is compensable, Fund liability is no longer precluded. Lewicki, supra.
We do not perceive, however, that the intent of the deletion was to relieve the employer of liability to the extent a specific prior condition was directly aggravated by the compensable accident. In cases where the last employment connected accident and injury results in total permanent disability the Fund is required to assume liability for that percentage of the statutory award represented by the percentage of causal contribution to the ultimate total disability of the pre-existing partial permanent disability as distinguished from the contribution by the last accident and injury. Katz, supra, 67 N.J. at 64-65. We hold, however, that to the extent any specific pre-existing injury or condition has been aggravated, activated or accelerated by the later compensable accidental injury the employer will be liable for the disability caused by the compensable injury including any aggravation, activation or acceleration and that the Fund will then be required to assume liability for the difference between such award and the total disability.
*223 A contrary interpretation would violate a commonsense interpretation of the Workers' Compensation scheme as a whole. For example, if an employee were not totally disabled by a compensable accident which independent of its aggravation of a prior injury or condition resulted in 45 percent disability, but in combination with its aggravation of the prior condition caused the petitioner an additional 45 percent of disability, the employer would be responsible for an award to the extent of 90 percent of partial total. See Belth v. Anthony Ferrante & Son, Inc., 47 N.J. 38, 46-48 (1966). If the deletion of N.J.S.A. 34:15-95(b) was interpreted contrary to our holding today and that same employee was totally disabled, the employer would be responsible for only the 45 percent disability attributable to the injury without considering the aggravation thereby relieving the employer of responsibility for the additional 45 percent of partial total that it would have been compelled to pay if the employee had not been totally disabled. We believe the purpose of the deletion was only to remedy the inequity caused by Fund ineligibility in cases where an aggravation of a prior condition caused less than total disability, but where the employee was nonetheless totally disabled because of other pre-existent injuries or conditions that had not been aggravated by the compensable injury.
Unfortunately, we are unable to determine from the findings of the judge of compensation whether the resulting assessment of disability as between the respondent employer and the Fund are proper. The judge of compensation makes reference to the serious pre-existing conditions of the petitioner but does not attribute specific disabilities to them either individually or in combination. The failure to make specific findings leaves us in doubt as to whether the judge determined the pre-existing conditions to have independently contributed to petitioner's total disability, whether he applied the "odd-lot doctrine" to petitioner's last compensable accident to find unemployability, or whether any of the prior disabilities were aggravated by his later compensable accidents, in which event greater *224 disability may be attributable to the employer. We find it necessary to remand to the judge of compensation for reconsideration, further findings and clarification.
We direct the judge of compensation to also reconsider and make specific findings with respect to the viability of the argument that petitioner's condition became fixed prior to his confinement of January 24, 1982 thereby precluding an award of temporary disability up to that date. While temporary disability to that date may be justified the judge failed to make sufficient findings to satisfy us that consideration was given to the alternative dates suggested on appeal.
We remand for reconsideration and additional findings. We do not retain jurisdiction.