## Mildred McCARVER and MUNRO-CLEAR LAKE FOOTWEAR *v.* SECOND INJURY FUND

86-46                                          715 S.W.2d 429

Supreme Court of Arkansas
Opinion delivered July 21, 1986

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for petitioner.

*David L. Pake*, Second Injury Fund, for respondent.

GEORGE ROSE SMITH, Justice. In this and a companion case we granted petitions to review decisions of the Court of Appeals reversing awards made by the Workers' Compensation Commission. *Second Injury Fund* v. *McCarver*, 17 Ark. App. 101, 704 S.W.2d 639 (1986); *Second Injury Fund* v. *Riceland Foods*, 17 Ark. App. 104, 704 S.W.2d 635 (1986). The two majority opinions of the Court of Appeals supplemented each other, but they dealt with a single issue, which is all we need consider.

The issue: Is the Second Injury Fund liable when an employee sustains a second injury while still working for the employer in whose employment he sustained the first injury? The Commission held the Fund liable; the Court of Appeals reversed.

In this case Ms. McCarver was working for Munro-Clear Lake Footwear when she suffered a back injury in 1979. She returned to work with an impairment of 5% to the body as a whole. In August, 1983, she suffered a compensable injury to her shoulder, arm, and hand. That too was a 5% impairment in itself, but the combination of injuries resulted in a total impairment of 30%. The claimant will be paid in any event. The question is

whether the extra 20% impairment is to be paid by the employer's insurance carrier or by the Second Injury Fund.

The policy reasons underlying the second injury statute, having to do with the continued employment and the reemployment of workers handicapped by an earlier injury, were considered by the majority and dissenting opinions in the Court of Appeals. The opinions also went into the basic question of statutory construction. We perceive nothing really new to add to the analysis presented by the Court of Appeals.

We are of the view that the majority opinions were right in putting primary emphasis on the language of the statute. On March 31, 1981, shortly before both the second injuries in these cases occurred, the legislature made this significant addition to the pertinent section of the Workers' Compensation Law:

> The Second Injury Fund established herein is a special fund designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred *while the worker was in his employment.* [Italics supplied.] Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985).

In commenting on the sentence just quoted, the majority in the *Riceland* case made this observation:

> Obviously, if as provided in the very first sentence of the statute—the sentence stating the reason and purpose for the statute—the employer employing a handicapped worker is to be liable *only* for the disability or impairment that occurs when the worker sustains an injury during the employment, then it must follow that such employer will be liable for *all* the disability or impairment that occurs when the worker is injured while in that employment.

We find the court's reasoning to be convincing.

Affirmed.

HICKMAN and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. I thoroughly disagree with the majority opinion in this case as well as in *Second Injury*

*Fund* v. *Riceland Foods* (86-50), which is being released today, to the extent it echoes this decision.

First, the majority says Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985) contains language persuasive to the effect that the second injury fund should not be liable because it precludes an employer from having to pay for any injury other than one sustained while the worker was in his employment. The simple answer to this point is that if the second injury fund has to pay in his case that statute will not be violated in any way. The employer will not be paying for any injury not incurred while the employee worked for him. He will only be paying for less than the entire disability.

Second, the majority is persuaded by the court of appeals' reference to that same statutory section and the court of appeals' reasoning that if the employer is required to pay for *only* such injury as the worker sustains in his employment "it must follow that such employer will be liable for *all* the disability or impairment that occurs when the worker is injured while in that employment." I cannot follow that reasoning. Why must the employer be liable for all? Neither the court of appeals majority nor that of this court explains. To the contrary, the employer need not be liable for all if the legislature has relieved the employer to the extent the sum of disability is greater than its parts by creating a second injury fund for that very purpose.

Third, looking at the opinion of the court of appeals majority, it becomes apparent that the principal reason for the result reached is fear of insolvency of the second injury fund. In this case the court of appeals cited the article by Bill Bassett expressing his personal fear of the fund's potential insolvency. W. Bassett, *Second Injury Law, Old and New*, The Arkansas Lawyer, July, 1983, p. 122 at p. 124. In the *Riceland* case, the court of appeals' opinion goes further, citing our opinion in *Arkansas Workmen's Compensation Commission* v. *Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950), where there is language requiring strict compliance with the statutory requirements for liability of the fund to avoid making it insolvent. Also cited in the *Riceland* case majority court of appeals opinion is Ark. Stat. Ann. § 81-1348(a) (Supp. 1985) which provides that if the fund becomes insolvent the payments from it will cease, and the

employer will, after July 1, 1983, not be liable to pay what would otherwise have been paid by the fund.

The court of appeals' quotation from the *Sandy* case was not even the language of this court. Rather, it was language from the workers' compensation commission's opinion in that case which our opinion quoted but neither approved nor disapproved. Our decision was only not to reverse the commission's factual conclusions as to the extent of the disability of the worker. The case was a far cry from a decision stating policies with respect to the extent of the second injury fund's exposure. Nor does the cited statute do more than provide for the contingency of the fund's insolvency. It gives no guidance whatever as to the Arkansas General Assembly's intent in creating the fund and, specifically, whether the fund should pay for disability in excess of that created by a second injury in the employment of the same employer who employed the worker when the first injury occurred.

Fourth, scant attention, if any, is paid by the court of appeals majority, or the majority of this court, to the policy behind the second injury fund legislation. As Professor Larson says, second injury funds have been created to solve the dilemma of apportionment of injury. His example is that an employee who loses one eye is far less disabled than he would be if he should lose the other eye in a later accident. Thus, the employer is subject to far higher insurance rates if he hires a person with only one eye. The employer thus has a strong financial incentive to discharge the worker who, by virtue of his handicap resulting from the loss of one eye, causes this "kind of aggravated liability." 2 A. Larson, Workmen's Compensation Law, § 59.31(a) (1983). The policy of eliminating this financial incentive is directly implicated whether an employer is considering hiring a handicapped worker whom he had not previously employed or retaining a worker who is permanently injured while working for him. I agree with Judge Glaze's dissent in the *Riceland* case to the effect that it is no answer to this problem to cite Ark. Stat. Ann. § 81-1335(b) (Repl. 1976). The fact that an employer may be sanctioned for *firing* an employee for bringing a workers' compensation claim places no requirement on an employer to *hire* or retain a handicapped employee. Nor should a handicapped employee be put in the position of having to show his dismissal was wilfully discriminatory on the basis of his having filed a claim when the

employer's intent may have nothing to do with retaliation but is simply a recognition that his insurance rate would be lower with a non-handicapped employee on the job.

Sixth, I believe it is traditional and useful to look to decisions in other jurisdictions when we have, as here, a question of first impression. Although the workers' compensation laws and second injury fund statutes may differ in detail from ours, surely the method of implementation of the policy behind the second injury fund law in other states is relevant. In *Estep* v. *State Workmen's Compensation Commissioner*, 298 S.E.2d 142 (W.Va. 1982), the West Virginia Supreme Court of Appeals was faced with this same question and said:

> It is the Commissioner's view that the second injury statute applies in circumstances where the employee suffers both injuries while employed by the same employer as well as when the injuries are suffered during employment with different employers. We agree. "The second injury life award statute, W. Va. Code § 23-3-1, was purposely designed to encourage employers to hire disabled workers by not charging an employer for preexisting disabilities." Syllabus Point 2, *Pertee* v. *State Workmen's Compensation Commissioner*, W. Va. 255 S.E.2d 914 (1979). This policy would be defeated if the second injury statute did not apply to cases where the employee suffered both injuries while working for the same employer. In such cases, the employer would have a financial incentive to dismiss the injured employee and hire a non-disabled worker. Application of the second injury statute here places all injured workers on the same footing regarding the employer's compensation liability for subsequent injury resulting in permanent total disability.

> Therefore, when an employee suffers a second injury, which when combined with the effect of a prior injury results in permanent total disability, and both injuries occurred while the claimant worked for the same employer, the employer is chargeable for the compensation resulting from the second injury and the second injury fund is chargeable for the remainder due the claimant.

Other cases in which a second injury fund has been held liable for

disability resulting from more than one injury while the worker was in the employ of a single employer include: *Zabita v. Chatham Shop Rite, Inc.*, 505 A.2d 194 (N.J. App. 1986); *Vaughn v. United Nuclear Corporation*, 650 P.2d 3 (N.M. App. 1982); *Stanick v. Seiberling Rubber Co.*, 253 N.Y.S. 548 (App. Div. 1964); and *O'Grady v. Sealright Corp.*, 374 N.Y.S. 424 (App. Div. 1975). I have found no cases from other jurisdictions to the contrary.

I respectfully dissent.

HICKMAN, J., joins.