PHILIP KATZ, PETITIONER-RESPONDENT, v. TOWNSHIP OF HOWELL, RESPONDENT-APPELLANT AND SECOND INJURY FUND, RESPONDENT-RESPONDENT.

Argued February 19, 1975—Decided March 18, 1975.

52

54

*Mr. James J. Gallagher* argued the cause for appellant Township of Howell (*Messrs. Johnson and Gallagher,* attorneys)

*Mr. Mitchell Melnikoff* argued the cause for respondent Philip Katz.

*Mr. Steven A. Tasher,* Deputy Attorney General, argued the cause for Second Injury Fund (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This is an appeal as of right, by virtue of a dissent in the Appellate Division, from a decision by that court (1) affirming a determination of the Division of Workmen's Compensation that petitioner became totally and permanently disabled as a result of a heart attack sustained in the employ of the appellant township but (2) reversing a decision of the Division that the respondent Second Injury Fund ("Fund" hereinafter) was legally responsible to share in the liability for the workmen's compensation award to the petitioner. The Judge of Compensation had found, contrary to the position of the township, that the petitioner's disability was attributable to an incident in the course of his employment as plumbing inspector; but he allocated only 70% of the total permanent disability to an alleged causative work incident of September 24, 1968 and "attributed" the remaining 30% of total disability to certain alleged previous conditions or illnesses. He recommended an award against the Fund for said 30%, and a judgment to that effect was duly entered.

The dissent in the Appellate Division held that such disability as petitioner suffered from after the incident relied upon was a result of the natural progression of his preexisting arteriosclerosis and not attributable to what was thought to be a mere anginal attack, although precipitated by a work episode.

There was evidence that petitioner had an acrimonious dispute with his superior officer on September 24, 1968 over not having reported to work the previous day because of a religious holiday. Petitioner soon thereafter had chest pains and difficulty in breathing. He went home early, saw his family physician, Dr. Zinkin, that evening, and returned to work the next day. The symptoms continued; petitioner had tests in a hospital; and he was later referred by Dr. Zinkin to a heart specialist. He continued to work for the township until June 16, 1969 but not under the supervision of the officer who had upbraided him. His chest and respiratory symptoms reappeared intermittently, and on such occasions he took a prescribed medication. Upon the recommendation of the heart specialist petitioner in September 1969 underwent a type of coronary bypass surgery involving a bilateral mammary artery implant. He did not thereafter return to any form of gainful employment although he runs a small horse-breeding farm.

Prior to the employment incident on September 24, 1968 both petitioner and Dr. Zinkin considered his health to be good. Petitioner had been involved in four preceding accidents in which he had received medical attention. He sustained a cut on the head requiring several stitches in 1954; in a rear-end auto collision in 1958 he sustained contusions and neck and back injuries; while a passenger in a vehicle hit by another auto in 1962 the soft tissue of his left shoulder was damaged; and in 1967 he suffered a ruptured blood vessel in a leg as he fell in attempting to avoid a wasp attack. According to Dr. Zinkin no permanent residual disability was incurred from any of the aforementioned accidents. Petitioner also testified to one other ailment — diabetes — apparently unknown to Dr. Zinkin, which had been under control through oral medication since diagnosed in late 1966.

Several medical experts expressed their opinions as to the nature of petitioner's illness and the extent of his disability. Dr. Alex Maron, an expert in industrial medicine,

offered by petitioner, examined him in December 1971. He noted a persistent irregularity in the heart rate and diagnosed the petitioner as afflicted with chronic heart disease manifested by angina pectoris or a thoracic pain coupled with a sense of suffocation. Based on his examination, the facts in the hospital records and Dr. Zinkin's report, the witness maintained that petitioner was totally and permanently disabled. He stated that twenty per cent of the total and permanent disability was of a neuropsychiatric nature emanating from the September 24, 1968 incident. Although he made no evaluation in percentage terms of any cardiac disability, Dr. Maron estimated that a controlled diabetic condition would account for fifteen per cent of the total disability while another twenty per cent ($12\frac{1}{2}\%$ and $7\frac{1}{2}\%$) was attributable to back and neck injuries, respectively, sustained in the prior auto accidents.

Dr. Rowland Goodman, a cardiologist who examined petitioner on May 15, 1970, asserted that the electrocardiographic tracing revealed a condition known as diffuse myocardial ischemia, meaning a lack of oxygen to the muscles of the heart caused by arteriosclerosis of the coronary arteries. Dr. Goodman agreed with Dr. Maron that petitioner was 100 per cent totally and permanently disabled as a "working unit" and attributed sixty-five per cent of the total to the cardiac disability. Explaining the cardiac condition physiologically, the witness stated that petitioner had a pre-existing arteriosclerotic heart condition advanced to a greater degree than ordinarily by diabetes, but unmanifested in any symptomatology. When an individual so afflicted becomes emotionally tense and nervous, the consequent increase in the heart rate and blood pressure causes, as here, some of the plaque lining the inner coronary artery walls to dislodge or protrude further into the artery. This can result in severe chest pain (*i. e.*, angina) and shortness of breath. There was such a physiological change in petitioner induced by the dispute at work on September 24. His prior cardiovascular condition was aggravated or accelerated. No coro-

nary infarction or complete blockage of the artery was realized; rather, there was only a coronary insuffiicency or partial blockage. Like an infarction, a coronary insufficiency is a single event in the course of the heart disease. By reason thereof, there was damage to the heart muscle, *i. e.,* scarring. Petitioner's diabetic condition was not assessed by the witness as interfering with his employability, but the witness pointed out that a patient with diabetes is not "the same whole man that he is without the condition". Problems can arise with the eyes, the kidneys and the extremities.

The respondent offered the testimony of cardiologist Dr. Sanford Lewis in rebuttal. Though conceding that some mild myocardial damage had occurred, he stressed that the angina merely reflected the underlying arteriosclerotic condition of the arteries. It was a symptom of the coronary insufficiency which in turn manifested the narrowed coronary arteries with which petitioner came to work on the morning of September 24. This coronary insufficiency and the accompanying angina were therefore not attributable to the altercation on that date. There was no change in the heart from what it was before — these were not diseases with which petitioner suddenly became afflicted, but only symptoms of a progressively worsening arteriosclerosis. The stress of the events of September 24 was the stimulus that produced symptoms and nothing more. In this doctor's opinion, petitioner had only a 33-1/3% partial total disability by reason of the coronary insufficiency, and it was not employment connected.

The treating cardiologist, one Dr. Schiraldi, did not testify although his report was entered in evidence over the objection of the Township. It contains no information not already stated above except for the fact that the patient's prognosis after surgery was "good". Dr. Lemkin, the examining physician for the Fund, concluded that the claimant was totally disabled.

Dr. Zinkin testified that petitioner had always been a "very virily (*sic.* ? "virile"), strong, very outgoing man who seemed to be fearless * * * When I saw him this day [the day of the heart incident] he was the antithesis of this strong, outward man. He was very unhappy, very worried, very scared, very anxious." Petitioner himself testified that the only reason he had not returned to work since the operation was because of angina pains and not because of the effects of any of his prior accidents. There was also evidence that prior to the heart attack petitioner worked at a horse breeding farm he owned, and he appears to have continued some degree of this activity after the heart operation.

I

■ Our first appellate task is to resolve the difference between the majority and dissenting judges in the Appellate Division. As noted above, the dissenter was of the view that petitioner's ultimate cardiac condition was not contributed to in any way by the stress incident of September 24, 1968 but that the incident merely evoked a symptom — anginal pain — of a pre-existing condition which was no different or worse after the incident than before. In essence, he embraced the thesis advanced by Dr. Lewis. The testimony of Dr. Goodman, however, if credited, supported the concept that the stress incident caused the intrusion into a coronary artery, already narrowed by arteriosclerosis, of a piece of plaque, further narrowing it and inhibiting the blood supply to the heart muscle. This in turn produced the anginal and other symptoms from which the petitioner suffered at that time and thereafter.

The other evidence in the case persuasively established that the operation which petitioner underwent was medically indicated by his condition and a proximate result thereof. Nor does any party argue the contrary.

We agree with the majority Appellate Division holding that Dr. Goodman's testimony, in the light of the whole rec-

ord, was a credible basis for a conclusion that there was substantial evidence in support of the compensation judge's determination that the work episode in question contributed materially to the heart attack and to petitioner's subsequent cardiac disability. As to the nature of the stress incident, the Judge of Compensation expressly declared his credence in petitioner's testimony as against that in opposition of the township official involved. See *DeAngelo v. Alsan Masons, Inc.*, 122 *N. J. Super.* 88, 89–90 (App. Div.), aff'd o.b. 62 *N. J.* 581 (1973).

## II

We are confronted with more formidable and complex issues in relation to the questions (1) whether petitioner was totally and permanently disabled after that heart attack and operation and (2) whether, if (1) is answered in the affirmative, the Fund is liable for a part of the award under *N. J. S. A.* 34:15–94, 95, 95.1, as held by the Division of Workmen's Compensation but denied by the Appellate Division. These questions will be seen to be interrelated. Our task is complicated not only by sharp divergencies in the factual proofs on both questions but also by the failure of some of those proofs to be addressed to applicable legal criteria for implication of Fund liability; by the absence of reasoned findings of fact by the Judge of Compensation on those criteria; and by an apparent inconsistency in the holdings of the Appellate Division on the separate issues of degree of permanent disability and incidence of Fund liability.

The requisite statutory report of the Judge of Compensation to the Commissioner of Labor and Industry, *N. J. S. A.* 34:15–95.1, finds the following "pre-existing disabilities — non-compensable" (none of which are stated to have been permanent) : (a) head injury of 1954; (b) neck and back injury of 1958; (c) soft-tissue injury to shoulder (1962); (d) ruptured blood vessel in leg (1967) ; and (e) diabetes (onset 1966). The report concludes that "the total and

permanent disability" found here to exist "is not due solely to [petitioner's] last compensable accident or occupational disease, but is due to the combined effects of his previous disabilities and his last compensable accident or occupational disease" (obviously a form decision since the instant case did not involve compensable occupational disease).

The opinion of the Appellate Division upheld the determination by the Judge of Compensation that petitioner was "completely and permanently disabled" as well as the Judge's attribution of 70% of this disability to the cardiac condition and associated anxiety neurosis and the remainder to "the residuals of preexisting conditions involving orthopedic injuries, diabetes and Parkinsonian symptoms" (this last was not included as a prior disability in the findings and report of the judge). However, the court reversed the assessment of the 30% of disability to the Fund because the evidence did not support a determination that the prior disabilities were partial permanent in character, as required by *N. J. S. A.* 34:15–95. The court cited the evidence that prior to the heart attack petitioner was a "strong, vigorous man" who worked at full capacity and had "no apparent discernible detrimental effects from any [previous] injuries, diseases or conditions". He was a "competent working unit without any obvious physical incapacity" before the accident.

The contrasting findings of the Appellate Division that at the time of the heart incident petitioner had no partial permanent disability, yet that 30% of his total permanent disability after the incident was attributable to prior pathological conditions, seem to us to present an apparent inconsistency of fact.

We find the presence of the following sub-issues under the present point of this opinion: (a) what are the criteria of total permanent disability under the Workmen's Compensation Act?; (b) what are the criteria of partial permanent disability for purposes of founding an award for such disability?; (c) are the criteria under (b) also applicable in deciding whether the petitioner has "previously been perma-

nently and partially disabled from some other cause", within the meaning of *N. J. S. A.* 34:15–95 for purposes of implicating liablity of the Fund to the petitioner?; and (d) does the answer to that question apply even though the "other cause" is not attributable to any employment and was not independently compensable?

A

██ Total permanent disability is found if the workman after the causative accident or employment exposure is rendered unemployable in a reasonably stable job market — and this notwithstanding that factors personal to the individual play a contributory part in such unemployability. *Barbato v. Alsan Masonry,* 64 *N. J.* 514, 526–527, 537 (1974). See also *Kalson v. Star Elec. Motor Co.,* 15 *N. J. Super.* 565 (Cty. Ct. 1951), aff'd 21 *N. J. Super.* 15 (App. Div. 1952).

██ The proofs in the present case are supportive of a determination either way on whether petitioners' disability, although clearly permanent, was total, in the sense of the foregoing definition. Petitioner himself said he developed pain and shortness of breath on any exertion or stress, and there were conclusions of permanent total disability by several of the physicians. What concerns us about affirming the accordant determinations by the Judge of Compensation and the Appellate Division is that neither of the physicians who, directly or indirectly, measured the contribution of the cardiac and associated conditions to the whole eventuating disability (Maron and Goodman), gave such conditions a greater weight than 65%, both allocating the balance to other preexisting conditions. But both petitioner himself and Dr. Zinkin said, in effect, that there were no disabling non-cardiac conditions prior to the heart attack. Petitioner was even able to dig fence post holes on his horse farm before the heart attack. If the latter proofs are credible they would seem to tend to discredit the cited medical opinion proof of total permanent disability to the extent that those

experts' attribution of only 65% thereof to the cardiac and associated conditions is also deemed credible.

In rendering his oral determination as to degree of ultimate disability the Judge of Compensation merely recited the testimony and rendered an ultimate conclusion of total permanent disability; but he did not evaluate the medical proofs or make findings thereon in such manner as would obviate the difficulty we have posed. See *D., L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 426–27 (1952). The fact issue is peculiarly one for the expertise of the compensation judge, and we therefore feel constrained, notwithstanding the unfortunate long pendency of the litigation, to remand the cause on this issue to the Division of Workmen's Compensation for the making there of specific findings of basic facts and of related ultimate conclusions so as to enable us properly to perform the appellate role of ascertaining whether the final conclusion of permanent total disability is supported by substantial credible proof on the whole record. *D., L. & W. R. Co. v. City of Hoboken, supra* (at 427–28) ; *Congleton v. Pura-Tex Stone Corp.,* 53 *N. J. Super.* 282, 285–86 (App. Div. 1958).

B

■ Contrary to classical theories that workmen's compensation is based solely upon impairment of earning capacity, 2 *Larson, Workmen's Compensation Law* (1975), § 57.00, our statutory provision for compensation of partial permanent disability, *N. J. S. A.* 34:15–12, 22, has been authoritatively construed not to require a showing of "immediate impairment of earning power" but to be satisfied by a "personal injury which detracts from the 'former efficiency' of the workman's body or its members in the ordinary pursuits of life' ". *Everhart v. Newark Cleaning & Dyeing Co.,* 119 *N. J. L.* 108, 111 (E. & A. 1937). Withal, however, the theory is that "the compensation is measured by the impairment of earning capacity, immediate or in the future." *Id.* at 112.

■ A special variant of the concept has arisen in the occupational disease area. Partial permanent disability is awarded when a condition arises which can be described as "a definite fault akin to traumatic injury", regardless of continuing capacity to work. *Calabria v. Liberty Mutual Insurance Co.*, 4 *N. J.* 64, 70–71 (1950) (septum perforation due to occupational chrome poisoning).[1] A complementary principle arose in occupational disease cases where the condition, although not strictly "a definite fault akin to a traumatic injury", was nevertheless a pathological condition which could be said to be a definitely "measurable, fixed and arrested" state of partial permanent disability. *Brooks v. Bethlehem Steel Co.*, 66 *N. J. Super.* 135, 146 (App. Div.) certif. den. 36 *N. J.* 29 (1961) ; *Giagnacovo v. Beggs Bros.*, 64 *N. J.* 32, 37–38 (1973).

## C

■ The above-noted question then arises, in relation to Fund liability, whether the foregoing criteria of partial permanent disability are applicable in determining whether the workman has been previously "permanently and partially disabled from some other cause", within the requirement thereof under *N. J. S. A.* 34:15–95. Reference to the purposes and objects of the Fund statute, as well as the ordinary meaning of the language used, would seem to call for an affirmative response.

■ The intent of the Fund statute is to "encourage the hiring by industry of people handicapped by pre-existing disabilities". *Paul v. Baltimore Upholstering Co., supra* (66 *N. J.* at 124, 129). In cases where the last and employment-connected accident and injury result in total permanent disability the Fund is required to assume liability for that percentage of the statutory award represented by the correspond-

---

[1] For the development of this rule see the extended discussion in *Bucuk v. Edward A. Zusi Brass Foundry*, 49 *N. J. Super.* 187, 202–211 (App. Div.), certif. den. 27 *N. J.* 398 (1958).

ing percentage of causal contribution to the ultimate total disability of the pre-existing partial permanent disability, as distinguished from the contribution by the last accident and injury. *Id.* at 132; *Nelson v. Meeker Foundry Co.*, 30 *N. J.* 139, 144 (1959). This also assumes, as the statute requires, that both the prior disability and the later accidental injury have in conjunction causally contributed to the total permanent disability.[2] *Balash v. Harper,* 3 *N. J.* 437, 442 (1950). Distinguish, however, the case of causal physiological relationship between the prior injury or condition and the later, whether by aggravation, activation or acceleration, in which case there is no Fund liability. *N. J. S. A.* 34:15–95(b) ; *Paul v. Baltimore Upholstering Co., supra* (66 *N. J.* at 122–125).

It might be contended that the object of the act, above noted, is not promoted by transferring liability to the Fund for the effect of prior disabilities not apparent when the worker was hired. But this would overlook the fact that many employers weed out job applicants by physicial examinations. The tendency to do this may be minimized by the assurance of the act to employers that even a latent prior permanent disability at the time of employment may constitute the basis for Fund relief upon the occasion of a later employment-connected total permanent disability, provided the other statutory conditions are also met.

Since the Fund may be implicated even if the prior disability is not employment connected at all, *Paul v. Baltimore Upholstering Co., supra* (66 *N. J.* at 128), and since all the alleged prior disabilities in the instant case are in that category, we should give consideration to whether the same criteria of partial permanent disability as discussed above apply to such non-employment connected prior con-

[2]However we are not to be understood as implying that there has to be a causal connection between the prior disability and the occurrence of the later accident.

ditions. We see no reason why they should not, and nothing to the contrary has been argued to us.

### D

In the light of the foregoing determinations as to the construction of the Fund statute, can or should either of the conflicting decisions as to Fund liability in the lower tribunals be sustained on this record?

We may say at the outset that there would be difficulty on this record, were we inclined to make the attempt, in determining factually whether the prior conditions upon which the Judge of Compensation rested his decision for Fund liability were partial and permanent and whether they contributed causally to the ultimate total permanent disability (assuming there was such; see Point II A of this opinion).

We are unable to accept the approach of the Appellate Division, in rejecting the thesis of prior partial permanent disabilities, to the effect that petitioner "apparently" was a competent working unit when he had the heart attack in 1968 and was performing his work; and that he had no "obvious" physical incapacity before the heart incident. Notwithstanding isolated superficially supportive expressions in the cases cited by the Appellate Division, *e. g. Wexler v. Lambrecht Foods,* 64 *N. J. Super.* 489, 504 (App. Div. 1960) certif. den. 34 *N. J.* 326 (1961), it is fundamental, as developed above, that one can be partially permanently disabled for compensation purposes notwithstanding that capacity to work continues. Because the Appellate Division went off on the ground stated we are without the benefit of its appraisal of the record in relation to what really matters here, *i. e.* (1) whether the prior conditions were indeed permanent and disabling as of the time of the heart incident, in terms of the criteria of partial permanent disability set forth above (in particular, not necessarily requiring present inability to work); and (2) whether such conditions, or any

of them, contributed causally to the ultimate total permanent disability found by the Appellate Division to have been established by sufficient evidence. Only in the event of affirmative findings on both of these fact questions can liability of the Fund be predicated.

It should further be noted that if the testimony of petitioner and Dr. Zinkin — that he had no disability as of the date of the heart incident and that his ultimate disability was based solely on his cardiac distress — were credited, Fund liability would have to be negated because of subparagraph (a) of *N. J. S. A.* 34:15-95 which provides the Fund is not liable "if the disability resulting from the injury caused by the last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning" of the act.

We are also unable to rest a determination of Fund liability on the decision of the Judge of Compensation to that effect independent of the Appellate Division ruling. There was, as noted above in relation to the judge's finding of total and permanent disability, a conspicuous paucity of reasoned evaluation of the proofs. This applies to both of the requisite findings that the prior conditions constitute permanent disabilities and that they have causally contributed to the total permanent disability. There is, in effect, a *conclusory* statement to the latter effect in the judge's report but none as to the requisite of permanency in relation to the former. As already explained, the sharp conflict between the substance of petitioner's and Dr. Zinkin's testimony on these questions, not to mention Dr. Lewis', on the one hand, and that of Doctors Maron and Goodman, on the other, requires the administrative fact-finder to explain his conclusions in terms of basic fact finding in the light of the evidence. It would be unwise and inappropriate for this court to attempt to do so in his place on this record.

Among the other matters he will have to deal with, we raise the particular question, for further consideration by the Judge of Compensation, whether naked, unexplained at-

tributions of percentages of disability to prior conditions by medical witnesses can satisfy the requirement for Fund liability of proof that such prior disability has played a causal role in producing the ultimate total permanent disability.

The remand ordered above will consequently include determination by the judge of the questions whether the alleged prior conditions were in fact disabilities, and permanent ones, as of September 24, 1968, whether they or any of them contributed to the ultimate total permanent disability (if found; see Point II A hereof), and, if so, in what percentage of the whole. The previous references to basic fact findings and related ultimate conclusions are also here applicable.

In relation to both phases of the remand ordered herein, the parties may offer additional or supplemental proofs. The court retains jurisdiction of the cause for purposes of review of the new findings and determinations, bypassing the Appellate Division in the interests of expediency. *R.* 2:9–1(b). Remand is to be completed within 60 days of the filing of this opinion.

### III

We find no merit in the several other grounds of appeal advanced by the appellant township.

Affirmed in respect of the issue of work-connection; reversed as to the determination of total permanent disability and as to liability of Second Injury Fund. Remanded to the Division of Workmen's Compensation for further proceedings consistent with this opinion. No costs on this appeal.

*For affirmance in part, reversal in part and remandment*— Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.