PHILIP KATZ, PETITIONER-RESPONDENT, v. TOWNSHIP OF HOWELL, RESPONDENT-APPELLANT, AND SECOND INJURY FUND, RESPONDENT-RESPONDENT.

Submitted July 9, 1975—Decided July 28. 1975.

*Messrs. Johnson and Gallagher,* attorneys for appellant Township of Howell (*Mr. James J. Gallagher,* of counsel).

*Mr. Mitchell Melnikoff,* attorney for respondent Philip Katz.

*Mr. William F. Hyland,* Attorney General, attorney for respondent Second Injury Fund (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Steven A. Tasher,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. The background of this litigation is set forth in *Katz v. Township of Howell,* 67 *N. J.* 51 (1975). We there affirmed a holding by the Appellate Division that petitioner's disability from a heart incident was causally attributable to his employment as plumbing inspector by the respondent township and therefore compensable. We withheld a determination as to whether petitioner was permanently and totally disabled after that incident and as to whether, if he was, the Second Injury Fund was liable for a portion of the compensation award. The Judge of Compensation had held the Fund liable for 30% of the award, based on prior disabilities, while the Appellate Division had found the Fund not liable because not satisfied that petitioner was, at the time of the heart incident, suffering from any prior permanent disability to which any portion of the ultimate permanent and total disability might be attributed. *N. J. S. A.* 34:15–95.

It is settled that in order for liability of the Fund to attach (1) the ultimate condition of the workman must be one of permanent and total disability; (2) the prior disability must have been partial and permanent; and *inter alia,* (3) the prior condition and the subsequent employment-con-

nected accident must "in conjunction" result in permanent total disability. *Paul v. Baltimore Upholstering Co.,* 66 *N. J.* 111, 126 (1974); *Katz v. Township of Howell, supra* (67 *N. J.* at 65). An obverse form of the latter thesis is stated in the statutory exemption of Fund liability "if the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning" of the act. *N. J. S. A.* 34:15-95(a). We alluded to this provision in the course of our prior opinion herein and intended it to be taken into consideration on the remand in connection with the issue of fact as to causal contribution by the alleged prior conditions to the ultimate and total disability. 67 *N. J.* at 67.

In our previous consideration of this appeal we expressed dissatisfaction with the nature of the findings of fact in both the Division of Workmen's Compensation and the Appellate Division as to permanent and total disability and as to the permanency of the prior conditions and their causal contribution to the total permanent disability. 67 *N. J.* at 60, 61, 63, 66-67, 68. We consequently remanded the matter to the Division of Workmen's Compensation for more specific findings on these questions and granted leave to the parties to offer additional or supplemental proofs. *Id.* at 68. We retained jurisdiction.

On the remand the respondent township offered, over the objection of the Fund, the report of a Dr. Villapiano who examined petitioner April 11, 1975. The doctor was not able to appear at the hearing, and the Judge of Compensation accepted the report for "what it was worth." The objection of the Fund should have been sustained. Our order for remand contemplated further proofs in the normal manner, *i. e.,* by in-court testimony subject to cross-examination. Aside from recitation of history, the report indicated an examination revealing various physical limitations and conditions as to which, along with diabetes mellitus and neuro-

logical deficiencies, the witness "would recommend" a total of 30% "partial total". While we give no weight to the report, as improperly received, it may be noted that it did not purport to express any opinion as to petitioner's cardiovascular condition, and it therefore, for reasons hereinafter to appear, would not in any case be material to the determination we have reached.

The only witness offered at the hearing on remand was Dr. Manuel J. Rowen, a Board-certified internist specializing in cardiology, whose testimony was adduced by the Fund. Dr. Rowen examined petitioner April 8, 1975. He was familiar with his medical history and records. The witness described the subject's cardiac condition as of the time he was hospitalized for surgery in 1969 as "extensive three-vessel disease, which is as sick as you can get when you have coronary artery disease because there are only three main vessels and all these vessels were involved." He said the surgical procedure had not been a success; that the patient "regressed, and it was shown that he evidently had closed off the vessels so that he no longer had the benefit of the surgery * * *. He actually was back to what he was before the surgery." Dr. Rowen classified petitioner's condition as "3-D" on a severity range of 1 to 4, with 4 representing the most disabled (bedridden) patient. In petitioner's case even mild activity is productive of shortness of breath or pain. Such effort was less than one would require for normal routine activity. The petitioner requires nitroglycerin "very frequently" for his chest pain but never achieves complete relief. He has to sleep on two pillows because of shortness of breath.

The doctor described petitioner's diabetes as mild, and controllable with medication. Independent of that condition, he regarded petitioner as 100% disabled "as a working person." from the standpoint of his cardiac status alone, having in mind his age and his customary vocation. The cardiac

condition "was the most and predominant symptom and disease that was present in this person".

The supplemental findings of the Judge of Compensation on the remand may be summarized as follows:

1. He found that petitioner was suffering from the following conditions prior to the incident of September 1968: (a) arteriosclerotic heart disease;[1] (b) diabetes mellitus; (c) orthopedic injuries, the most significant being the results of the accidents of 1962, 1967 and 1968. (Compare the dates indicated in our prior opinion, 67 *N. J.* at 56).

2. All of the stated prior conditions were permanent. There is no express finding, as called for by our order for remand, that any or all of these conditions were causally contributive to the total and permanent disability after the heart surgery, but that is the clear implication.

3. There is no express finding, as also directed by our order, as to the totality and permanency of the ultimate disability, but the affirmative is clearly implied.

4. Based on the testimony originally received the previous judgment (Fund liability for 30% of the award) "is amply supported by the proofs."

In arriving at his conclusions the Judge of Compensation described the Second Injury Fund Law as remedial in nature and subject to liberal construction in favor of employers. There is no foundation for this viewpoint. As we have pointed out recently, the legislative policy is a delicately balanced one, designed, it is true, to encourage employers to hire partially disabled workers, yet at the same

---

[1] A prior arteriosclerotic heart condition would not qualify as a prior disability under the statute for two reasons. First, there is no showing it was "fixed, measurable and arrested". *Paul v. Baltimore Upholstering Co., supra,* 66 *N. J.* at 123–124, note. Second, Dr. Goodman testified that condition was causally related to the disabling heart incident. See the *Paul* case, *passim; N. J. S. A.* 34:15-95(b).

It may be noted that the Judge of Compensation did not cite this condition as one of the prior qualifying disabilities in his original determination.

time concerned against inroads upon the Fund unless all the statutory criteria, both affirmative and negative, are satisfied. See *Paul v. Baltimore Upholstering Co., supra,* 66 *N. J.* at 129. Note the limiting amendments to the law adopted in 1940. *Id.,* at 125. Moreover, the burden is upon those (the employer or the petitioner) who seek to impose liability on the Fund to establish the statutory criteria therefor. *Ort v. Taylor-Wharton Co.,* 47 *N. J.* 198, 207 (1966). The true adverse party in a Fund case is not the employee but the employer or his insurer. *Paul v. Baltimore Upholstering Co., supra,* 66 *N. J.* at 129.

We have concluded that the determination of the Fund Law aspect of this appeal may properly be rested on the thesis advanced by the Attorney General on behalf of the Fund that the cardiac aspect of petitioner's disability establishes him as 100% permanently disabled as a working unit from that condition alone, irrsepective of any prior conditions or disabilities contributive to petitioner's actual ultimate disability. If the fact stated has been adequately established, then paragraph (a) of *N. J. S. A.* 34:15–95, quoted above, is determinative in favor of the Fund.

■ The paragraph noted embodies the legislative policy that the employer where the compensable accident occurs should not enjoy a windfall of Fund relief if the injury from that accident in itself is productive of a disability that qualifies as total and permanent within the meaning of the act, by mere reason of the fact that prior conditions or disabilities may also be contributive to the *actual* ultimate condition of the workman.

■ The Judge of Compensation implied that he could not properly accept Dr. Rowen's testimony that the cardiac condition of itself amounted to total permanent disability because it reflected a worse cardiac condition as of the date of the examination in April 1975 than that indicated by the medical experts who testified as of the date of the original hearing to a lesser cardiac disability. The latter time-frame was regarded by the Judge as controlling. This was error.

The effect of our remand and authorization of additional testimony was to extend the final hearing in the case to the period of the remand testimony. And it is well settled that workmen's compensation cases are decided on the factual posture as of the time of determination of the cause. See *J. W. Ferguson Co. v. Seaman,* 119 *N. J. L.* 575, 581–582 (E. & A. 1938) ; *DiCostanzo v. Matthews Construction Co.,* 110 *N. J. Super.* 383, 389 (App. Div. 1970), aff'd equally divided court, 58 *N. J.* 159 (1971).

The Judge of Compensation not having directed his attention, although urged by the Attorney General at the hearing to do so, to the factual contention that petitioner's cardiac condition of itself produced total and permanent disability within the meaning of the act, we will exercise our jurisdiction to determine the fact, *R.* 2 :10–5, in order to bring this unduly protracted litigation to a close.

As we pointed out in our prior opinion, 67 *N. J.* at 62, total permanent disability is found if the workman after the causative accident is rendered unemployable in a reasonably stable job market, citing *Barbato v. Alsan Masonry,* 64 *N. J.* 514, 526–527, 537 (1974). Qualities personal to the subject, including his age, may enter into the disability equation. *Id.* at 530. In both the *Barbato* case, *supra, and Zanchi v. S. & K. Const. Co.,* 63 *N. J.* 331 (1973) we found total and permanent disability in the case of heart attack victims aged about 60 notwithstanding that in each case the petitioner was capable of greater effort without distress than the present evidence exhibits as to the petitioner here. This petitioner was 54 years old at the time of the heart incident in 1968 and 61 as of the last examination.

The testimony of Dr. Rowen as to petitioner's physical limitations attributable to his cardiac condition alone is most persuasive of his present unemployability as a plumbing inspector, or, indeed, in any vocation requiring even a modicum of physical effort. Even considering the situation as of the prior hearing, petitioner himself testified that he did not return to work after the operation in 1969 because of

the angina pains. See 67 *N. J.* at 59. It is quite clear that the contribution, if any, of petitioner's prior disabilities, orthopedic or diabetic, to his present overall disability, is minor at best.

    The testimony of Doctors Goodman and Maron, relied upon by the Judge of Compensation, is not actually to the contrary of the Attorney General's thesis. Neither of them was requested to address the question whether petitioner's cardiac condition, of itself, equated with total and permanent disability in the sense of a competent working unit. They merely took the whole man, with all his ailments, and allocated specific percentages of the whole of his disabilities to his cardiac condition *vis a vis* his other ailments, or *vice versa*. See 67 *N. J.* at 56–57. Such conclusions are not relevant to the statutory criterion for Fund exemption we are here examining and do not negate or even impair the hypothesis of total and permanent disability attributable to the cardiac condition of itself.

    From what we have said it is implicit that we agree with the Judge of Compensation that petitioner is totally and permanently disabled as a result of his heart incident in respondent's employ and of the causally connected surgery consequent thereupon. So much of the judgment on remand of the Division of Workmen's Compensation is affirmed. So much of the judgment on remand as imposes partial liability on the Fund, is, for the reasons stated, reversed.

*For affirmance in part and reversal in part*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*Opposed*—None.