696 A.2d 764

LEONARD DI BERNARD, PETITIONER–RESPONDENT, v.
GREAT ATLANTIC AND PACIFIC TEA COMPANY,
RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 22, 1997—Decided July 18, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Joseph V. Wallace* argued the cause for appellant Great Atlantic and Pacific Tea Company (*Hack, Piro, O'Day, Merklinger, Wallace & McKenna,* attorneys; *Mr. Wallace,* of counsel and on the brief).

*Michael J. Rowland* argued the cause for respondent Leonard Di Bernard (*Mr. Rowland,* of counsel and on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

This is an appeal from an order entered on May 30, 1996 requiring respondent employer to "continue to provide all necessary medical treatment" for petitioner's previously assessed compensable injury. The order was based upon the Judge of Compensation's written decision on a "motion for medical and temporary disability benefits."

It is undisputed that petitioner sustained a work-related injury on July 8, 1980 for which he underwent back surgery on two occasions. By judgment entered on March 15, 1985 he was found "to be totally and permanently disabled as of September 6, 1982."

Respondent-employer (hereinafter "respondent," although appellant before us) was found "responsible for 66% of total permanent disability for the orthopedic and neurological residuals of two laminectomies at L4–L5 with excision of herniated disc and lysis of adhesions superimposed upon a previously-surgically-treated back, with nerve root compression on the right." As a result of the "last accident and pre-existing back surgery," which had occurred prior to the 1980 work related injury, petitioner was also "found eligible for benefits from the Second Injury Fund." The respondent's last payment for the total permanent disability was in May 1988 for a period through June 5, 1988. Respondent's last payment for medical treatment was in August 1990. The Second Injury Fund began making disability payments effective June 6, 1988.

In 1993, over two years after both the last medical treatment and payment, petitioner began to again suffer serious back pain. As a result of examinations, a CAT scan, and a myelogram, a recurrent herniated disc or related scar tissue was discovered, and another operation was deemed necessary. In October 1993, after contacting respondent, petitioner underwent a hemilaminectomy at L4–L5. The surgeon attributed petitioner's condition to the prior surgeries.

Based on these findings, Judge Fred H. Kumpf of the Division of Workers' Compensation concluded that petitioner's need for medical treatment was "causally related to the injury of July 8, 1980" and that "but for the occurrence of the herniated disc at the L4–L5 level . . . the petitioner would not have had a recurrent disc at that level." As a result, he concluded "that the injury of July 8, 1980 caused the petitioner's need for surgery in 1993" and that "the bills for treatment petitioner received for the recurrent disc were reasonable."[1]

The judge rejected the employer's claim that it was no longer responsible for the medical treatment because more than two years elapsed since the last payment for medical treatment and

---

[1] There is no contest before us as to these findings.

because the Fund had been paying the disability benefits for more than two years prior to the 1993 operation.

The judge found that because "petitioner is still receiving [disability] benefits, applications for medical treatment under *N.J.S.A.* 34:15–15 are still viable." He held that "[s]ince the medical treatment is related to the compensable injury, the respondent is responsible for that medical treatment notwithstanding the fact that the respondent itself has not paid [the] total permanent disability benefits to the petitioner for more than two years before the application for the treatment."

On this appeal respondent argues that "petitioner's application to obtain payment of medical bills claimed to be related to his compensable accident is barred by the provisions of *N.J.S.A.* 34:15–27 as it was filed more than two years after the last payment of workers' compensation by the respondent." We disagree, and affirm.

*N.J.S.A.* 34:15–27 provides, in pertinent part, that:

> An agreement for compensation may be modified at any time by a subsequent agreement. A formal award, determination and rule for judgment or order approving settlement may be reviewed within 2 years from the date when the injured person last received a payment upon the application of either party on the ground that the incapacity of the injured employee has subsequently increased....

Judge Kumpf held that the two year statute of limitations was inapplicable "because petitioner is still receiving permanent total disability benefits" and "[t]he cases ma[k]e it clear that where the petitioner is still receiving benefits, applications for medical treatment under *N.J.S.A.* 34:15–15 are still viable," citing *Howard v. Harwood's Restaurant Co.,* 25 *N.J.* 72, 135 *A.*2d 161 (1957), and *Fierro v. Public Serv. Coordinated Transport,* 44 *N.J.Super.* 73, 129 *A.*2d 470 (Co.Ct.1957). The employer argues that the cases relied upon by Judge Kumpf deal with a situation where "the petitioner was receiving total permanent disability compensation benefits *from the respondent* [employer] as a result of a totally disabling compensable accident and was seeking further medical benefits from the respondent in connection with each claim." It

insists that the statute prohibits an award against the employer for medical benefits "more than two years after the last payment of workers' compensation" benefits by the employer.

*Fierro* held that because petitioner was "still receiving extension payments," *R.S.* 34:15–27 did not preclude his 1956 petition under *R.S.* 34:15–15 to modify a 1944 award relating to a 1932 injury. *Fierro, supra,* 44 *N.J.Super.* at 77, 129 *A.*2d 470. And in *Harwood*, an employer was required to pay for nursing and medical care under *N.J.S.A.* 34:15–15 after an award of permanency was entered because it was necessary to "relieve" the worker of the effects of the compensable injury, even though he could not be "cured." *Harwood's, supra,* 25 *N.J.* at 94, 135 *A.*2d 161. But, as respondent notes, these decisions preceded the seminal decision of the Supreme Court in *Sa v. H.L. Harrison & Son Inc.,* 38 *N.J.* 203, 183 *A.*2d 410 (1962), where the Court had to decide whether petitioner was entitled to expenses for surgery he deemed medically necessary after the two year statute of limitations embodied in *N.J.S.A.* 34:15–27 had run.

In *Sa,* the petitioner was awarded a partial permanent disability in 1955 for a 1953 accident. In 1957, the percentage of disability was increased. A foreign particle remained in petitioner's eye and in proceedings commenced in 1959 ("just two days before expiration of the two-year limitation on petition for increased disability, *N.J.S.A.* 34:15–27") he tried to show "that the foreign body might have to be removed at some indefinite future time for some presently unknown reason." *Sa, supra,* 38 *N.J.* at 205, 183 *A.*2d 410. He therefore sought "additional pecuniary benefits" but "did not assert a claim for further medical or surgical services." *Ibid.* The Court held that

> the limitation periods prescribed by the statute, *R.S.* 34:15–51, 34:15–27 and 34:15–41, barring claims for compensation unless a proceeding is commenced within, *inter alia,* two years after the occurrence of the accident or two years after the last payment of compensation apply to petitions under *R.S.* 34:15–15, to compel the furnishing of medical or surgical services.
>
> [*Id.* at 207, 183 *A.*2d 410.]

As Justice Hall wrote:

> Petitioner's apprehension of a similar predicament is natural and understandable, even though the medical evidence in his case is entirely negative as to any such possibility. But to grant the relief he seeks would fly directly in the face of the basic statutory limitations freeing employers from all compensation obligations for specific injuries once two years have passed from the date of the accident or the last payment of compensation, whichever is the later. This court has only recently noted that the ultimate limit for the prosecution of compensation claims is within the legislative province and as such must be accepted by the judiciary. *Kane v. Durotest Corp.*, 37 *N.J.* 552, 182 *A.*2d 559 (1962). Our statute gives to the Division a relatively narrow authority to deal with an employee's changing medical condition. Two years from the date of final payment has been selected by our Legislature as the time within which a medical need or a deteriorating condition must manifest itself in order that the employee may require compensation by his employer for that changed condition either by way of money benefits or medical services. The Legislature no doubt was aware of the administrative and practical difficulties that attend a wide power to continuously reopen cases to accommodate any claimant whose physical condition may change. See 2 *Larson, Workmen's Compensation Law* § 81.10 (1952). An order with respect to medical treatment or expenses that might possibly become necessary at some date far in the future would clearly violate the balance struck by our Legislature in establishing the limitation periods.
>
> [*Id.* at 208, 183 *A.*2d 410.]

In his dissent, Justice Jacobs suggested that if future surgical or medical expenses were contemplated as necessary by virtue of the injury, the original judgment could "reserv[e] jurisdiction to entertain proceedings thereunder." *Id.* at 212, 183 *A.*2d 410.

Here, petitioner did not seek to reopen the judgment within two years of the accident or the employer's last compensation payment, as permitted by the majority in *Sa*, nor sought a provision in the original judgment embodying the right to apply for further benefits for necessary surgery. But petitioner was still collecting compensation benefits because he had a permanent total disability.

A permanent disability compensates an employee after all medical treatment necessary to ameliorate the compensable condition has been provided. *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 114–116, 469 *A.*2d 22 (1984); *N.J.S.A.* 34:15–36. Where the permanent injury is total and the employee had a pre-existing partial permanent disability, the Second Injury Fund becomes responsible for the total permanent disability so that employers are not discouraged from hiring persons with partial disabilities

and so that the employer is not responsible for paying that portion of the permanent disability not related to the work related injury at his or her place of employment. *See, e.g., Katz v. Howell Township,* 67 *N.J.* 51, 335 *A.2d* 14 (1975), *aff'd and rev'd after remand,* 68 *N.J.* 125, 128, 343 *A.2d* 417 (1975). But there can be no doubt that payments by the Second Injury Fund are "compensation payments." *See N.J.S.A.* 34:15–95 (incorporating *N.J.S.A.* 34:15–12(b)). Moreover, the Legislature did not limit the period in *N.J.S.A.* 34:15–27 to two-years following the last payment made by the employer or its carrier.[2] As a result the rule in *Sa,* interpreting *N.J.S.A.* 34:15–27 and prohibiting the reopening of medical benefits more than two years after the last payment of compensation benefits, is not applicable here.

Accordingly, we affirm the judgment of the Division of Workers' Compensation ordering the payment of the additional medical expenses.

---

[2] *Compare N.J.S.A.* 34:15–95.1 limiting petitions for Second Injury Fund benefits to "within 2 years after the date of the last payment of compensation by the employer or the insurance carrier...."

