**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1992-20

LAURA LETTIS-YILMAZ,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

        Argued March 22, 2022 – Decided August 23, 2022

        Before Judges Currier, DeAlmeida and Smith.

        On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

        James J. Uliano argued the cause for appellant (Chamlin Uliano & Walsh, attorneys; James J. Uliano, of counsel; Andrew T. Walsh, on the brief).

        Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Jane C. Schuster, Assistant

Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Laura Lettis-Yilmaz appeals from the February 9, 2021 final agency decision of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF) denying her application for ordinary disability retirement benefits. We affirm.

I.

Lettis-Yilmaz was employed as a teacher at Lakewood High School for twenty-two years. She was injured at work five times. On January 17, 2006, Lettis-Yilmaz slipped and fell in the school parking lot, injuring her back and right knee. After spinal fusion surgery, she returned to work full-time. On August 30, 2010, Lettis-Yilmaz injured her back while moving boxes to a classroom. After treatment by a physician, she returned to work full time. On May 3, 2011, Lettis-Yilmaz tripped over a student's book bag and fell, injuring her neck. She subsequently returned to work full-time. On April 4, 2013, Lettis-Yilmaz slipped and fell on water a student spilled near a trash can, injuring her left knee. After treatment, she returned to work full-time.

After these incidents, Lettis-Yilmaz's employer accommodated her reported pain and inability to sit or stand for long periods. She was taken off

hall monitoring and cafeteria duty, both of which required extended standing, and placed on office duty, which she could perform while alternating between sitting and standing. Her employer also complied with a doctor's note allowing Lettis-Yilmaz to sit or stand as needed while teaching. She was provided a podium and stool to allow her to sit and stand with support as she desired in the classroom. Lettis-Yilmaz's job description did not include any physical requirements and did not require her to stand or sit for any specified periods of time. There are no stairs to get into the school and Lettis-Yilmaz's classroom and the department to which she was assigned are on the first floor.

Finally, on February 28, 2014, Lettis-Yilmaz tripped on a sidewalk and injured her right knee. Following this incident, Lettis-Yilmaz had total right knee replacement surgery. Although she recovered from the procedure, she never returned to work. Lettis-Yilmaz resigned effective January 1, 2015, because her attendance was problematic and she had exhausted her leave time.

On December 1, 2014, Lettis-Yilmaz began receiving social security disability benefits. On July 31, 2018, a judge of compensation awarded Lettis-Yilmaz workers' compensation benefits, with her employer liable for fifty percent of her total and permanent disability. An order described her disability as being due to the combined effects of her previous disabilities and the last

compensable accident and lists pre-existing non-compensable disabilities, including post-concussive syndrome in 1980, a concussion and broken nose in 1976, torn tendon left shoulder in 1976, concussion with stitches in 1995, and anxiety and depression beginning in 2002.

In 2016, Lettis-Yilmaz applied to the Board for accidental disability retirement benefits. She alleged she was totally and permanently disabled from the performance of her regular and assigned duties as the result of back, neck, and knee injuries from the January 17, 2006, April 4, 2013, and February 28, 2014 incidents.

The Board denied the application, finding Lettis-Yilmaz is not totally and permanently disabled from the performance of her regular and assigned duties. The Board determined, however, that she was entitled to a deferred retirement based on her age and years of service and was eligible to collect monthly retirement benefits on the first of the month after her sixtieth birthday.

Lettis-Yilmaz appealed the Board's decision. The Board transferred the appeal to the Office of Administrative Law for a hearing, after which Lettis-Yilmaz amended her application to seek ordinary disability retirement benefits.

After hearing testimony from Lettis-Yilmaz and two experts, an Administrative Law Judge (ALJ) issued an initial decision recommending that

the Board's denial of Lettis-Yilmaz's application be affirmed. The ALJ set forth a detailed description of the testimony of the two experts, each a physician board-certified in orthopedic medicine whose qualifications were not challenged. The expert presented by Lettis-Yilmaz offered the opinion that she is totally and permanently disabled from performing her duties based on her complaints that she is unable to sit or stand for more than ten minutes at a time because of pain in her back, neck, and knees. The Board's expert offered the opinion that Lettis-Yilmaz is not totally and permanently disabled from performing her duties because her complaints of pain are subjective and not corroborated by objective medical findings or her medical records.

The ALJ found the opinion of the Board's expert to be more credible for several reasons: (1) unlike Lettis-Yilmaz's expert, the Board's expert reviewed her job description before formulating his opinion; (2) Lettis-Yilmaz's expert relied on her subjective estimate of how long she could sit or stand, which did not appear as a limitation in her medical records; (3) Lettis-Yilmaz's expert gave no consideration to the accommodations made by her employer; (4) the Board's expert fully explained the methodology and results of his physical examination of Lettis-Yilmaz, while her expert did not describe his physical examination of

her; and (5) the Board's expert's opinion is supported by the records of Lettis-Yilmaz's treating physicians, who approved her to return to work.

Having determined that Lettis-Yilmaz is not totally and permanently disabled from the performance of her regular and assigned duties, the ALJ concluded the Board should affirm its decision denying her application for ordinary disability retirement benefits.

Lettis-Yilmaz thereafter filed exceptions from the ALJ's initial decision. On February 9, 2021, the Board issued a final agency decision adopting the ALJ's initial decision and affirming its denial of Lettis-Yilmaz's application for ordinary disability retirement benefits.

This appeal follows. Lettis-Yilmaz argues: (1) the Board's decision is contrary to the weight of the evidence; (2) the determinations of the Social Security Administration (SSA) and the judge of compensation that she is disabled are binding on the Board by virtue of the doctrine of stare decisis; and (3) the Board is collaterally estopped from opposing Lettis-Yilmaz's application.

II.

Our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "unless there

6

is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result . . . .'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Id. at 99.

We have carefully reviewed the record in light of the relevant legal precedents and find ample support for the Board's denial of Lettis-Yilmaz's application for ordinary disability retirement benefits. A member of TPAF is entitled to ordinary disability retirement benefits when the member "is physically or mentally incapacitated for the performance of duty and should be

7

retired." N.J.S.A. 18A:66-39(b). "The applicant for ordinary disability retirement benefits has the burden to prove that he or she has a disabling condition and must produce expert evidence to sustain this burden." Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008); see also Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).

The applicant must show that the disabling condition is total and permanent. Bueno, 404 N.J. Super. at 122, 124. In addition, the applicant "must establish incapacity to perform duties in the general area of his ordinary employment rather than merely showing inability to perform the specific job for which he was hired." Skulski v. Nolan, 68 N.J. 179, 205-06 (1975).

We see no basis in the record on which to reject the Board's decision adopting the ALJ's determination that Lettis-Yilmaz did not prove that she is totally and permanently disabled from the performance of her regular and assigned duties. The ALJ's determination was based primarily on her finding that the opinion of the Board's expert was credible. The trier of fact determines an expert's credibility and the weight to be accorded to their testimony. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961). "Deference to a trial court's fact-findings is especially appropriate when the

evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Since the hearing tribunal court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

Nor are we persuaded by Lettis-Yilmaz's arguments regarding stare decisis and collateral estoppel. "The doctrine of stare decisis – the principle that a court is bound to adhere to settled precedent – serves a number of important ends." Luchejko v. City of Hoboken, 207 N.J. 191, 208 (2011). Specifically, stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Id. at 208 (quoting Payne v. Tennessee, 501 U.S. 808, 827 (1991)).

The decisions of the SSA and judge of compensation are not binding legal precedents the Board is required to apply to Lettis-Yilmaz's retirement application. The question before the Board was whether Lettis-Yilmaz satisfied the requirements set forth in N.J.S.A. 18A:66-39(b) for the award of ordinary disability retirement benefits. However, the SSA applied the federal social

A-1992-20

security disability statutes, and the judge of compensation applied the Workers' Compensation Act (WCA), N.J.S.A. 34:15-1 to -146, to determine if she was entitled to benefits under those laws.

While the SSA statutes and the WCA may use terms similar to those found in N.J.S.A. 18A:66-39(b), the statutory schemes are distinct. For example, federal law does not require that a disability be permanent for the award of benefits. See 42 U.S.C.A. § 423(d)(1)(A) (defining disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."). Under the WCA, "[t]otal and permanent disability exists where a worker is 'rendered unemployable in a reasonably stable job market' after a work-related accident, 'notwithstanding that factors personal to the individual play a contributory part in such unemployability.'" Zabita v. Chatham Shop Rite, Inc., 208 N.J. Super. 215, 220 (App. Div. 1986) (quoting Katz v. Twp. of Howell, 67 N.J. 51, 62 (1975)). These standards differ from those set forth in N.J.S.A. 18A:66-39(b).

In addition, Lettis-Yilmaz was awarded workers' compensation benefits based on a host of medical conditions other than the neck, back, and knee injuries she listed in her application for ordinary disability retirement benefits.

The Board, however, was limited in its analysis under N.J.S.A. 18A:66-39(b) to "the medical conditions described on the . . . application submitted" by Lettis-Yilmaz. See N.J.A.C. 17:1-7.10(h).

Collateral estoppel is a doctrine "designed to afford 'efficient justice by avoiding the relitigation of matters that have been fully and fairly litigated and fully and fairly disposed of.'" Hennessey v. Winslow Twp., 368 N.J. Super. 443, 452 (App. Div. 2004) (quoting Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 166 (App. Div. 1988)). Agency determinations may be accorded collateral estoppel effect in subsequent proceedings under certain circumstances. Id. at 452. Collateral estoppel is applicable if the asserting party can demonstrate,

> (1) the issue to be precluded is identical to the issue decided in the first proceeding; (2) the issue was actually litigated in the prior action, that is, there was a full and fair opportunity to litigate the issue in the prior proceeding; (3) a final judgment on the merits was issued in the prior proceeding; (4) determination of the issue was essential to the prior judgment; and (5) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior proceeding. Even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.
>
> [Id. at 453 (quoting Pace v. Kuchinsky, 347 N.J. Super. 202, 215 (App. Div. 2002))].

As noted above with respect to stare decisis, the issues before the SSA and the judge of compensation are not identical to those before the Board. Collateral estoppel, therefore, does not apply.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1992-20